[S. F. No. 1863.    In Bank.—February 18, 1902.]

## ALBERT T. ROCHE, Respondent, v. E. J. BALDWIN, Appellant.

PLEADING—PROOF—VARIANCE.—The allegations and the proofs must correspond; and if a special conditional contract is proved, and only an implied contract is averred, the *probata* and *allegata* do not correspond.

ID.—ACTION FOR PROFESSIONAL SERVICES—QUANTUM MERUIT—EXPRESS CONTRACT—COMPENSATION TO BE FIXED BY DEFENDANT.—In an action to recover the value of professional services rendered by plaintiff's assignor, as an attorney for the defendant as his client, if it appears that it was expressly agreed that the defendant and his agent should fix the amount of his compensation, an action upon a *quantum meruit* will not lie; but the complaint should count on the special contract, and allege, as a breach, either that the agreement had been repudiated by the defendant or that he had refused to act under it in fixing the compensation.

ID.—INSTRUCTION—ASSUMPTION OF FACTS NOT PROVED—DENIAL OF LIABILITY.—An instruction assuming, without any proof, that the defendant had before suit denied any liability upon the special agreement, or had refused to recognize it, and predicating thereon that the special agreement would be no defense to the action for the reasonable value of the services, is prejudicially erroneous.

ID.—ABSENCE OF AGREEMENT NOT TO SUE—EFFECT OF SPECIAL AGREEMENT—DEFENSE—ERRONEOUS INSTRUCTION.—An instruction that, unless it was expressly agreed that no suit should be brought to recover the value of the services until after the sum or amount had been fixed by the defendant and his agent, the special agreement would be no bar or defense to the action, and plaintiff would be entitled to the reasonable value of the services rendered, after deducting the indebtedness of his assignor to the defendant, is prejudicially erroneous.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.    John Hunt, Judge.

The facts are stated in the opinion of the court.

Byron Waters, and Lloyd & Wood, for Appellant.

Theodore J. Roche, Walter H. Linforth, and Linforth & Whitaker, for Respondent.

VAN DYKE, J.—The action is brought upon claims assigned to the plaintiff by H. E. Highton, an attorney at law, and is based upon professional services alleged to have been rendered the defendant by said assignor, Highton, in several different cases or matters. The largest amount claimed is in the case of Ashley *v.* Baldwin, for which the sum of ten thousand dollars is claimed. The case was tried by a jury, and a verdict rendered in favor of the plaintiff in the aggregate of $8,755.60. Defendant's motion for a new trial was denied, the plaintiff having consented in writing to remit from the verdict rendered the sum of $2,642.60. The appeal is taken from the judgment and from the order denying a new trial.

On the appeal the case of Ashley *v.* Baldwin only will be considered, and it is not necessary to refer further to the other smaller claims. The appellant urges two points on the appeal:—

1. The employment in Ashley *v.* Baldwin was upon the condition that the amount to be paid for the services should be fixed by the defendant, Baldwin, and his agent, Mr. Unruh, and that such amount never was fixed, and the defendant never refused to fix it, and that the present action, brought upon a *quantum meruit,* as to that claim cannot be maintained. There cannot be much question that the employment in that case was conditioned. Unruh testified as follows on that point: "I was present at a conversation between Mr. Baldwin and Mr. Highton relative to the employment of Mr. Highton in the Ashley case. My impression is that the interview was suggested by Mr. Highton, Mr. Highton saying that he had had some talk with Mr. Baldwin in relation to the case; and we were to meet in the office to talk over the matter. We met in the office of the Baldwin Hotel, near the door going into the private office, and there Mr. Highton suggested his being employed in the Ashley case, and went on to state that he could be of great service; that he was under such obligations to Mr. Baldwin as would prompt him to render such services faithfully, and do everything that he could for Mr. Baldwin. He expressed himself as being deeply grateful to Mr. Baldwin for the way that Mr. Baldwin had treated him in years past. He referred to his leniency—the leniency with which Mr. Baldwin had treated him with regard to the board bill; the summing up was, in substance, that he would go into the case and do everything

that he could, and I think that either Mr. Baldwin or myself, I don't remember which, suggested that some fee should be specified. Mr. Highton expressly and plainly stated that he would leave that entirely with Mr. Baldwin and myself to fix, without any reservation; and he repeated it half a dozen times, that we should fix the fee; that he would leave it entirely to us; that we had always treated him fairly; and after the interview I made a memorandum of that statement. The making of this memorandum fixes it plainly in my mind. But I find the book in which it is copied, the leaf on which the memorandum was made is torn out; how it came I cannot say. I was distinctly told that he would leave the fixing of the fee to us.''
Defendant, Baldwin, testified as follows: ''The employment of Mr. Highton in the Ashley case occurred in this way: Mr. Highton had asked me a number of times to employ him. He said I had plenty of business, and ought to employ him to give him a chance to pay some of his debt to me. Mr. Lloyd wanted me to employ General Barnes. I was pushed for money, and did not want to pay out money when a man was owing me. I had an arrangement to meet Mr. Highton and Mr. Unruh. I asked Mr. Highton what fee he would charge me. I told him I would like to know the fee before I hired him. After talking around about a number of things, he spoke of how long he had been in the hotel, and how much his wife thought of the house, and the way they had been treated; he went on to say, 'I shall leave this entirely to you and Mr. Unruh. I do not make a fee at all; I will leave that to you two; whatever you two say is right, I will be satisfied and willing to take.' Under those circumstances I employed him and told him to go on.'' Highton, the assignor, testified as follows: ''I have a very distinct recollection of the fact that Mr. Baldwin, Mr. Unruh, and myself were together on the outside of the office of the Baldwin Hotel at the time of my engagement in that case; and that when they had stated to me that they wished me to take some part in that case,—in fact, I think it was brought about to some extent by my own suggestion,—Mr. Unruh, according to my recollection, said to me in the presence of Mr. Baldwin,— standing by Baldwin,—'Judge, what about the fee; about compensation?' or something to that effect. I said, 'You and I can fix that without any trouble at all, at any time'; that is about just what I said. I cannot repeat the exact language.''

And the instruction hereafter noted practically assumes that the employment of Highton in the Ashley case was conditioned as to payment. Otherwise, said instruction is meaningless, as not being applicable to any facts proven. The contract of employment in this case, therefore, being conditioned upon the fixing of compensation in the manner stated, the action as to that part of the case cannot be supported upon a complaint as upon a *quantum meruit.* The complaint as to this matter should have counted upon the agreement, as alleged in defendant's answer and as proven at the trial, together with an allegation that said agreement had been repudiated by defendant, or that he had refused to act under it in fixing the compensation. As the complaint now stands, the *probata* and *allegata* do not at all correspond. (*O'Connor* v. *Dingley,* 26 Cal. 21; *Victor Sewing Machine Co.* v. *Scheffler,* 61 Cal. 530; *Daley* v. *Russ,* 86 Cal. 114; *Lavenson* v. *Wise,* 131 Cal. 369.) In the latter case, as in this, the agreement or contract was special, and contained a condition, and the court say: "Under the facts in the case, as they now appear, we are unable to discover any ground upon which the present action on *quantum meruit* can rest as to the matter of the suit against Murphy and Smalley."

2. The following instruction given by the court at the request of the plaintiff is assigned as error: "If you believe from the evidence that Mr. Highton agreed with Mr. Baldwin and Mr. Unruh at the time of his employment in the case of Ashley *v.* Baldwin that Mr. Unruh and Mr. Baldwin should fix the amount of compensation for the services to be by him rendered in that case, and that he was to receive and accept the sum they saw fit to name, yet, if defendant, before the commencement of this suit, denied any liability or indebtedness to Highton, and if it was not also agreed between them that no suit should be brought against Mr. Baldwin to recover the value of the services until after such sum or amount had been by Mr. Baldwin and Mr. Unruh so fixed, then, in that event, I charge you that such an agreement, if any, is not a bar or a defense to this action, and plaintiff is entitled to a verdict at your hands for the reasonable value of the services by him rendered, if any, after deducting therefrom any sum or amount due from Mr. Highton to defendant, if any." The instruction assumes that there was evidence going to show

that the defendant, Baldwin, before the commencement of the suit, had denied any liability under that agreement or had refused to recognize it. There is not a particle of evidence in the case justifying such an assumption. In his answer defendant sets forth the agreement, and avers "that said Highton has never submitted the matter of his compensation for his services in the case aforesaid to this defendant and said Unruh, and that he has not heretofore and prior to the commencement of this action requested them to determine the amount to be paid to the said Highton, for his said services." And he further avers that he and said Unruh have always been ready and willing to fix and determine the amount to be paid to Highton for his services in said case. It is true Baldwin had stated that he did not owe Highton anything. That statement of Baldwin's is entirely consistent with the averments in the answer, from the fact that it appears from a statement of Baldwin's agent, Unruh, that Highton was indebted to Baldwin, aside from the services in question, in the sum of $3,177, and doubtless Baldwin supposed that that would be sufficient to compensate Highton for such services. Baldwin says, in explanation of his statement: "I did not deny that there was an agreement between Mr. Highton and myself with reference to this employment and compensation in the case of Ashley *v.* Baldwin, because that would have been a mistake; I could not have understood the question when I answered it, because we had an understanding." Highton admitted that he was indebted to Baldwin at the time, and claims that it was only $1,200, and said that Mr. Baldwin had treated him very nicely, and that if Baldwin had some employment he would be willing to give to him he would be very glad to receive it. " I made that suggestion more than once; probably two or three times."

The portion of the instruction holding that unless it was agreed between them that no suit should be brought to recover the value of his services until after such sum or amount had been fixed by Baldwin and Unruh, that then the agreement would be no bar or defense to the action, and plaintiff was entitled to a verdict for the reasonable value of his services, is a proposition of law unsupported by the authorities. *Holmes* v. *Richet,* 56 Cal. 307,[1] was an action upon a builder's

[1] 38 Am. Rep. 54.

contract, which contained this clause: "But should any dispute arise respecting the true value of the extra work or works omitted, the same shall be valued by two competent persons, one employed by the owner, the other by the contractor. In case they cannot agree, those two shall have the power to name an umpire, whose decision shall be binding upon all parties." It was claimed in that case that the agreement to submit to arbitration was independent and collateral. The court replies to this: "But that is not this case. Here the party simply agreed that the amount or value of certain extra work should be fixed in a certain manner, and was there any right of action in this case for and on account of said extra work until the value thereof was fixed according to the terms and conditions of the contract? In other words, was it not a condition precedent to any right of action, that the value of the extra work should be determined in the mode provided by the contract?" The court, after citing a number of cases from England and this country, held that the stipulation in the contract was not an independent collateral agreement to submit to arbitration, but was a part of the contract itself, and that it was a condition precedent to the right of action on the contract. Further on, in reference to the proposition referred to in the instruction, that it was not agreed that no suit should be brought until the price of the extra work and material should be fixed as stated, the court says: "It is true, that the contract in this case does not declare that no action shall be brought until the amount of damages has been fixed; but that is the meaning and legal effect of the contract. In the case (*President etc. Delaware etc. Canal Co.* v. *Pennsylvania Coal Co.,* 50 N. Y. 250) referred to it is said: 'When, as here, the agreement is, that the covenantor shall pay such sum and only such sum as shall be determined by arbitrators, the procuring an award is as clearly a condition precedent to an action as if the parties had added, and no action shall be maintainable until after the award of the arbitrators. Such a clause would be surplusage, and its insertion a work of supererogation.'" (See, also, *Loup* v. *California So. R. R. Co.,* 63 Cal. 97; *M. E. Church* v. *Seitz,* 74 Cal. 292.)

Against the doctrine announced in the foregoing cases, in reference to the clause constituting a condition in the contract precedent to the right of recovery, the respondent cites *Remy*

v. *Olds,* 88 Cal. 542; *Hamilton* v. *Home Ins. Co.,* 137 U. S. 370. In the former case the defendants had personally notified plaintiff in writing that they would not furnish the deed or make the conveyance stipulated, and the court very properly held that in such case a demand was unnecessary; that the law did not require a vain thing. The latter case was a suit upon an insurance policy, and it is said with reference to the defense set up: ''There are two cases where such a plea as the present is successful,—first, where the action can only be brought for the sum named by the arbitrators; secondly, where it is agreed that no action shall be brought until there has been an arbitration, or an arbitration shall be a condition precedent to the right of action. In all other cases where there is, first, a covenant to pay, and, secondly, a covenant to refer, the covenants are distinct and collateral, and the plaintiff may sue on the first, leaving the defendant to bring an action for not referring, or to stay the action until there has been an arbitration. Applying this test, it is quite clear that the separate and independent provision, in the policy now before us, for submitting to arbitration the amount of the loss, is a distinct and collateral agreement.'' Here, however, as in the case of *Holmes* v. *Richet,* 56 Cal. 307,[1] it is a part and parcel of the agreement that the compensation should be fixed in the manner stated, and not a collateral or independent agreement to submit to arbitration. But it is said by the respondent that the instruction complained of, if erroneous, was without prejudice or injury to the appellant, because he had denied liability under the agreement.

The instruction assumed, against the evidence, as already shown, that defendant had repudiated the agreement,—denied liability under it,— and held that unless it was expressly stipulated in the agreement,—which it was not,—that no suit should be brought until after the amount had been fixed, then it was no defense, and the plaintiff was entitled to a verdict. It appears, therefore, very clearly that this erroneous instruction in effect disposed of the case in favor of the plaintiff.

The judgment and order denying a new trial are reversed and the cause remanded.

Garoutte, J., concurred.

[1] 38 Am. Rep. 54.

TEMPLE, J., concurring.—I concur in the judgment, on the ground that the instruction discussed in the opinion is erroneous and may have been injurious. It rendered it unnecessary for the jury to determine the question of fact in regard to the terms of the employment.

Harrison, J., and Beatty, C. J., concurred.

McFARLAND J., dissenting.—I dissent, and adhere to the opinion delivered in Department. I think that the judgment should be affirmed.

HENSHAW, J., dissenting.—I dissent, and adhere to the opinion heretofore rendered in Department. The prevailing opinion reverses the judgment of the trial court upon the flat statement that the agreement between Highton and Baldwin was, that Highton's fee for services rendered in the Ashley litigation should be fixed by Mr. Baldwin and Mr. Unruh; and it is said: "The complaint as to this matter should have counted upon the agreement, as alleged in defendant's answer and as proven at the trial, together with an allegation that said agreement had been repudiated by defendant, or that he had refused to act under it in fixing the compensation. As the complaint now stands, the *probata* and *allegata* do not at all correspond." Such a declaration can only be justified upon a showing that the evidence in the case without conflict establishes the agreement which was set up by defendant, Baldwin, as a special defense to the action. But not only is this not established without conflict, but the evidence of Unruh and Baldwin tending to establish it is squarely denied by Mr. Highton, the third party to the agreement, and absolutely repudiated by him. Mr. Highton thus testifies : "There was no understanding that I should receive as compensation in that case what Mr. Unruh and Mr. Baldwin should name as a fee." Still further, Mr. Highton testifies that, so far from agreeing that Mr. Baldwin and Mr. Unruh should fix his fee, the sole conversation upon the matter occurred when Mr. Unruh asked him to name the amount of his fee, and he replied: "You and I can fix that without any trouble at all at any time."

The complaint is drawn upon a cause of action consonant

with the testimony offered by Mr. Highton,—namely, that he
was employed, that his fee was not fixed, and that in the
course of the conversation the statement above quoted was
made. The special defense was this agreement testified to by
Mr. Unruh and Mr. Baldwin and flatly denied by Mr. Highton.
The jury evidently accepted the evidence of plaintiff. I can-
not comprehend, therefore, in the face of this evidence and
the finding of the jury, how this court can say, not only that
the agreement pleaded by Baldwin was established, but that
the complaint should have charged upon an agreement which
Mr. Highton absolutely denies was ever made. Moreover, it
is to be observed that this special defense is a highly techni-
cal one, designed to forbid an inquiry into the actual value of
Mr. Highton's services, upon the theory that he had absolutely
left the fixing of those services to his client and to his client's
manager, and that they had not fixed them. Mr. Baldwin
repeatedly asserted that he owed Mr. Highton nothing. He
so stated to many people, and testifies, "I should have stated
that to any one." Mr. Highton, or his assignee, under the
evidence which they offered, were justified in commencing the
action upon a *quantum meruit,* and it was open to Mr. Baldwin
to urge against the demand any offsets or counterclaims which
he had against his attorney.

The instruction which is attacked is considered in the De-
partment opinion heretofore rendered. To what is there said,
however, it may be added that, under the theory put forward
by the special defense, it was still the duty of Mr. Unruh and
Mr. Baldwin to "fix" the compensation which Mr. Highton
should receive. It is uncontradicted by the evidence that at
the conclusion of Mr. Highton's services in all these matters
he presented to Mr. Unruh and to Mr. Baldwin a statement of
those services, and he further testifies that he tried very hard
to have an adjustment and settlement with them. Mr. Bald-
win (not denying the presentation of the statement of services
from Mr. Highton) testifies that Mr. Highton repeatedly
asked him for money, and that he refused to give it to him;
never "upon the ground that Mr. Unruh and I would fix his
compensation, but I refused on the ground that he was owing
me." This cannot be construed into a "fixing" of Mr.
Highton's fee in the Ashley case for many reasons: 1. Be-
cause the fixing of a fee means something more than a secret

and undisclosed determination as to what value he would put upon those services, which value rested in the mind of Mr. Baldwin alone, and was not disclosed to Mr. Highton. It means the actual placing of a value upon those services and a communication of that value to the other party in interest; and 2. Because Mr. Baldwin does not plead that he ever fixed the fee, but in his answer asserts that he and Mr. Unruh have always stood ready and willing to fix the fee, but have not been requested so to do. It is not extraordinary that Mr. Highton should not have requested them to fix the Ashley fee, when, as above shown and quoted, he distinctly repudiates that there was any such agreement as that set up in the special defense; but it does appear, without contradiction, that he asked for money, and asked for a settlement of the financial matters between him and Mr. Baldwin, and never obtained any response to these requests other than the answer, as testified to by Mr. Baldwin, that he would give him no money, because he owed him nothing. This action was brought nearly a year after the close of the services of Mr. Highton, and after presentation by Mr. Highton to Mr. Baldwin of his account of those services. It was the active duty of Mr. Unruh and Mr. Baldwin, under the very agreement which they have pleaded, to have fixed the value of those services, and their failure and refusal to do so for this long period of time clearly puts them in default, and justifies the prosecution of this action and the verdict of the jury under the instruction given. For, even if the jury could have believed that the agreement was as Mr. Baldwin pleaded it to be, his long refusal and delay, which, as he says, was never predicated upon the fact that he and Unruh were to fix the compensation, warranted Mr. Highton in the belief, and the jury in finding, that the agreement that existed was repudiated by Mr. Baldwin, or, if not repudiated, his failure to take action, when he alone was the only one who could and should have acted, justified Mr. Highton in his resort to a court for the determination of the value of his services. If, therefore, it could be said that the instruction was erroneous,—a proposition which I do not concede,—still clearly, I think, it demonstrated that the error could have worked no injury to appellant.

Rehearing denied.

The following is the opinion rendered in Department Two on the 14th of June, 1901, and above referred to:—

HENSHAW, J.—This action was to recover for the value of the services rendered to defendant by plaintiff's assignor, Henry E. Highton, as attorney and counselor at law. The jury returned a verdict for plaintiff for the sum of $8,755.60, and from the judgment which followed and from the order denying defendant's motion for a new trial he prosecutes these appeals.

It is urged with much earnestness that the evidence is insufficient to justify the verdict, in that the services of Mr. Highton were of far less value than the jury found. But this is only another form of saying that the value placed upon the services by the jury was excessive. That value, however, was within the evidence, and the finding cannot be disturbed.

The remaining points presented on this appeal go to alleged errors of the court in its ruling upon offered evidence. Upon cross-examination, the witness Highton was asked several questions touching his employment in the Ashley case. Objection was interposed to these questions and the objection sustained. The fact of Mr. Highton's employment in this case was admitted by the pleading; the plaintiff charged for the value under *quantum meruit*. There was no pretense on behalf of plaintiff that the compensation in this litigation was fixed in any specific sum. The questions, therefore, were irrelevant to any issues made in the case. The employment of Mr. Highton in the Ashley case having been admitted, the court said: "Then, what concern is it to the jury how he came to be employed?" Appellant's counsel replied: "It has a relevancy to the question as to whether there was any agreement as to the amount of his compensation." This is the only reason for propounding the question, but, as has been said, there was no claim whatsoever that the amount of his compensation had been fixed. Moreover, the same question was subsequently asked in different form, the witness fully interrogated upon the matter, and his answers received.

Mr. Crittenden had been an attorney against Mr. Highton in the trial of the Ashley case. Asked as to the value which he put upon the services of Mr. Highton in that litigation, which came under his (Mr. Crittenden's) observation, and

concerning the nature of which he had already testified, the witness answered: "I could not answer that question, unless I looked into my mind, and then reviewed the study of matters that came under my observation; otherwise, I cannot answer it.—Q.  Taking that into consideration, what would you say as to the reasonable value of those services?"  The witness then answered, fixing the value at twelve thousand dollars. The objection to this is, that the witness was allowed to fix the value by looking into his mind, and testifying in regard to facts not in evidence; but the witness had already presented to the jury the facts upon which he based the valuation, and there was no error in the admission of the evidence.  Again, the same witness is asked: "According to your basis, and according to the way practice ordinarily runs, what annual income would that make to a man?"  The court properly sustained an objection to this question, saying: "That would depend upon the number of cases.  The witness could not possibly answer the question."

The hypothetical question asked of the witnesses Paterson, Campbell, and Jordan were answered, and subsequently the court reconsidered its ruling, and the answers were stricken out, upon motion of defendant's attorney.  If there was error in the reception of this evidence, it was cured by striking it out, and nothing was left for the defendant to complain of. (*People* v. *Wilson,* 109 N. Y. 352; *People* v. *Shaver,* 120 Cal. 354.)  The court instructed the jury as follows: "If you believe, from the evidence, that Mr. Highton agreed with Mr. Baldwin and Mr. Unruh at the time of his employment in the case of Ashley *v.* Baldwin, that Mr. Unruh and Mr. Baldwin should fix the amount of compensation for the services to be by him rendered in that case, and that he was to receive and accept the sum they saw fit to name, yet, if defendant, before the commencement of this suit, denied any liability or indebtedness to Highton, and if it was not also agreed between them that no suit should be brought against Mr. Baldwin to recover the value of the services until after such sum or amount had been by Mr. Baldwin and Mr. Unruh so fixed, then, in that event, I charge you that such an agreement, if any, is not a bar or a defense to this action, and plaintiff is entitled to a verdict at your hands for the reasonable value of the services by him rendered, if any, after deducting there-

from any sum or amount due from Mr. Highton to defendant, if any." It is asserted that this was error, in taking away from the consideration of the jury the special defense pleaded in the answer, to the effect that the value of the services of Mr. Highton rendered in the Ashley case should be determined by defendant and one H. A. Unruh, and that defendant should not be required to pay Mr. Highton for his services in the Ashley case any sum whatever, until the amount thereof had been fixed and determined by defendant and Unruh. But, as was said by this court in *Remy* v. *Olds,* 88 Cal. 542: "The law does not require the performance of a useless act, and when it is made to appear, by the defendant's own act, that the demand would have been refused, then they cannot be heard to object that no demand was made." Here the defendant had persistently denied that he owed his attorney anything on account of the services in the Ashley case. Moreover, there was no provision in the agreement pleaded in the answer that no action should be brought until after defendant and Unruh had fixed the amount of Mr. Highton's compensation. In *Hamilton* v. *Home Insurance Co.,* 137 U. S. 370, a like question came under consideration. The action was upon an insurance policy, which contained the following clause: "In case differences shall arise touching any loss or damage, . . . the matter shall, at the written request of either party, be submitted to impartial arbitrators, whose award in writing shall be binding on the parties as to the amount of such loss or damage, but shall not decide the liability of this company under this policy." The supreme court of the United States held that this clause could not be availed of as a plea in bar to the action, in the absence of a further provision, which it did not contain, that no action should be brought until after the award. But if it be conceded that there was any error in the instruction, it was certainly harmless to appellant, since, throughout the case, he denied any indebtedness to Mr. Highton upon account of his services in the Ashley litigation.

The judgment and order appealed from are therefore affirmed.