# HAWAIIAN TRUST COMPANY, LIMITED, *v.* WILLIAM L. WELSH, ET AL.

## No. 2246.

Argued September 8, 1937.          · Decided December 22, 1937.

Coke, C. J., Banks, J., and Circuit Judge Metzger in Place of Peters, J., Disqualified.

OPINION OF THE COURT BY CIRCUIT JUDGE METZGER.

This cause came to this court upon the appeal of William L. Welsh, one of the respondents, from the decree of the circuit judge sitting in equity, at chambers, entered in the court below on May 29, 1935. Appellant's opening brief is entitled, "Brief for Respondents-Appellants, William L. Welsh, Ann Loraine Welsh, and Barbara Jean Welsh, Betty June Welsh and Jack Horner Welsh, minors, by William L. Welsh, their guardian ad litem" but the record discloses that notice of appeal and appeal was made by, or in behalf of, no person other than William L. Welsh in his personal and individual capacity. Whether or not the decree of May 29, 1935, is *res adjudicata* as to other respondents is not considered here for this court can consider only the appeal that is before it, that of respondent William L. Welsh. Appellant's closing brief was filed May 19, 1937.

The suit was brought for the purpose of establishing in the petitioner, Hawaiian Trust Company, Limited, an equitable lien in the nature of a mortgage on property that constituted the corpus of a trust created by William L. Welsh by his deed dated November 12, 1926, in which trust indenture and agreement the petitioner joined as trustee; for judgment for principal and interest found to be due to it, with costs and expenses, and for enforcement of its lien by foreclosure and sale of the trust property upon default of William L. Welsh, or any of the respondents, to pay the sum

found to be due the trustee within such time as the court should fix.

The indenture of agreement between the parties does not specify any particular time for repayment of any loans or advances that should be made under it. Named and unnamed contingent beneficiaries under the trust were made parties respondent. The petitioner's original bill was filed September 25, 1934, and, during the course of trial, an amended bill was filed on May 10, 1935, bringing accounts down to May 3, 1935. The bill as amended sets forth that petitioner as trustee paid all necessary expenses of maintaining and managing the trust property and executing the trust and that it expended in so doing and in money loans and advances made to and upon the demands and with the approval of the grantor, William L. Welsh, a sum in excess of the rents and other income from the trust estate, aggregating, on May 3, 1935, a principal of $35,236.22, against which it claimed interest accrued, at a rate provided in the trust instrument, the further sum of $16,105.50, making a total sum of $51,341.72 as due it on said date; that on September 24, 1934, it made demand upon William L. Welsh for payment of principal and interest claimed due it at that time, to wit, the aggregate of $50,535.17, which demand was refused and no part thereof was paid.

The respondent William L. Welsh filed his amended answer to the original bill on January 21, 1935, and by agreement this stood as answer to the amended bill. Trial began on May 7, 1935, and continued on May 8, 10 and 23, 1935, with intervening postponements on May 16 and 21. In the respondent's answer he charged that the trustee had, without his prior knowledge of the true situation, knowingly violated a provision of the trust agreement in making loans to him and advances in behalf of the estate far in excess of 50% of the value of the trust property and that it cannot now be permitted to enforce its demands and

lien in such manner as will destroy or imperil the entire trust estate. The answer cites paragraph 4 of the trust agreement as containing a limitation upon the trustee in incurring or permitting indebtedness in excess of 50% of the property value. The paragraph referred to reads as follows: "4. It is understood and agreed by and between the parties hereto that the Trustee shall from time to time and as and when requested by the Grantor, but in its own discretion, advance and loan to the Grantor such amounts as the Grantor may require, and it is hereby declared to be the understanding of the parties hereto that in case the financial and other condition of the Trustee, and the condition of the Trust Estate (all in the opinion of the Trustee) warrant it, the Trustee will presumably, if so requested by the Grantor, advance to the Grantor up to 50% of the net value of the Estate, which net value shall be fixed and determined by the Trustee." The answer further sets forth that the trustee violated the grantor's directions and the authority it obtained from him in relation to the purchase of 250 shares of Standard Oil Company of California stock, and thereby incurred a loss; that loss in the value of property was incurred by mismanagement and inexcusable negligence in its upkeep and in allowing part of it to become unproductive; that a loss of $1000 to $2000 was sustained by mismanagement by the trustee in the sale of certain real property, and that the trustee's advances for the purchase of an outstanding curtesy in the property of the estate were clearly inopportune, excessive and detrimental to the estate.

The decree of the circuit judge held that the grantor, William L. Welsh, was indebted to the petitioner, the trustee, in the full sum of $51,341.72 as of May 3, 1935, for which the property of the trust was liable under the terms of the grant and subject to foreclosure and sale; that said sum was then wholly due and unpaid, and said respondent

was allowed ten days within which to pay said indebtedness with interest and costs, less any intervening net income from the property, failing which the property was ordered to be sold at commissioner's sale, at which sale the trustee could become a purchaser. Among other things, the court found that the trustee was entitled to simple interest in the sum of $16,105.50, notwithstanding it had not, prior to the date of its suit, included $4100 of this sum in its accounts; that the 250 shares of Standard Oil Company stock were purchased by the trustee subject to the conditions imposed by William L. Welsh and with his written consent; that the complained of sale of a certain lot of real property was likewise made with said respondent's written consent and pursuant to conditions imposed by him; that the receipts from the trust estate, both as to earnings and sales, down to May 3, 1935, were $34,951.08 and were insufficient to meet the costs of maintaining the estate and executing the trust, including loans and advances of more than $30,000 made at the requests of William L. Welsh, which costs and loans, with interest thereon at the agreed rate of 6½% per annum, amounted to $86,292.80, and that the trustee had expended and lent its own money and there was due it from and on account of the grantor and the trust estate, the sum of $51,341.72; that the financial and other conditions of the trustee and the condition of the trust estate warranted the loans and advances made to the grantor and that the trustee did not advance grantor in excess of 50% of the net value of the estate as reasonably fixed and determined by the trustee. In the trial, the respondent produced no witnesses and made but slight effort to prove the affirmative defense allegations of the answer.

In the appellant's opening brief, twenty-three errors are assigned, but the questions that are brought up on the appeal and were argued before this court, consist of the following: 1. Under the terms of the trust deed and under

all of the circumstances, was the trustee entitled to enforce a lien against the trust property? 2. Was the judgment of the lower court excessive on account of its inclusion of $4100 interest charges, which interest, although agreed to in the trust instrument, had not been charged in the trustee's accounts for the period from December 25, 1932, to September 24, 1934? 3. Was the judgment excessive on account of its inclusion of $6500 paid by the trustee to J. T. Silva to acquire a release of his curtesy interest in the trust property? 4. Was error committed by the trial court in its requirement that the trial proceed at the close of petitioner's case on May 23, 1935? 5. Did the trial court commit reversible error in its ruling with respect to certain cross-examination of the petitioner's witness, John R. Galt?

The first question "Was the trustee entitled to enforce a lien against the trust property?" brings up for construction the provisions of paragraph 4, of the trust agreement and consideration of the methods and manner of dealings between the parties, the grantor and trustee under the trust, and the trustee's administration and management of the trust and its properties.

Appellant in his brief claims that the trustee was guilty of mismanagement in that it advanced money and created charges against the trust estate in excess of the net value of the assets thereof, and contends that paragraph 4 of the trust agreement, above quoted, limited the authority of the trustee, and its security in the trust property, to loans and advances of no greater amount than 50% of the value of the property. The trustee contends that there is no limit fixed in the trust agreement to which advances could be made by it, save its own discretion; that it did not loan or advance to William L. Welsh more than 50% of the net value of all of the property at the time such loans or advances were made and that the trust deed was intended to

give, and does give, it full protection for all advances to the extent of the full value of the trust property.

The evidence shows that the first draft of the trust instrument was made at the instance of the grantor, Mr. Welsh, and by his counsel, and upon its being submitted to the trustee several changes were made by the trustee. The nature and extent of changes made were not disclosed by the evidence.

The deed gives the trustee power and authority to manage the grantor's property therein described and to pay all necessary expenses of maintaining and managing the estate and executing the trust; also, to make money advances directly to the grantor at his request and within its discretion, as set out in its paragraph 4. Rates of compensation to the trustee for its services are provided, also a rate of interest, 6½% per annum, upon quarterly balances of loans or advances made by it. The grantor reserved the right to terminate the trust at any time upon paying to the trustee all indebtedness due it from him or the estate, also the right to revoke or change the interest of any beneficiary and add new ones at his will. Sales, mortgage, or lease for more than five-year terms, could not be made of any trust property without the written consent of the grantor.

If it were Mr. Welsh's intention, as he now contends, that paragraph 4 of the trust deed should be a limitation upon the trustee in meeting his requests and making loans and advances beyond 50% of the net marketable value of the trust property from time to time, and that the trustee would become at once imperiled and without security for any advances it should make, or had made, beyond 50% of the net value, he chose very inept words for expressing such an intended agreement and limitation. As we construe the provision, it is not a limitation upon the trustee to make advances, but at most it is a limitation upon the right of grantor to demand advances beyond 50% of net values as

determined by the trustee. It was equivalent to a promise of the trustee, the good faith of which could have been enforced no doubt by the grantor. There is no promise by the grantor that he should not ask for loans beyond 50% of value, nor of the trustee that it would not permit the estate to become indebted to it for more than this amount. Paragraph 5 of the deed gave the trustee security for such advances and all other indebtedness due to it from the grantor or the trust estate. Paragraph 5 reads as follows: "5. The Trust Estate and the rents, income, issues and profits thereof shall at all times be and remain a security to the Trustee for all indebtedness, if any, of the Trust Estate or the Grantor to the Trustee under this instrument, including all advances by the Trustee to or for the Grantor during the continuance of the Trust, and such indebtedness shall, until fully paid, be and remain a first lien upon the same, and to that intent and for that purpose this instrument shall constitute a mortgage upon the Trust Estate and the rents, income, issues and profits thereof, with all the incidents of a mortgage and shall have priority over any mortgage, lien or other incumbrance placed or attempted to be placed upon the Trust Estate or the rents, income, issues and profits thereof, or the beneficial right of the Grantor therein by whomsoever placed or attempted to be placed."

The evidence shows that the trustee carried out its agreement, perhaps too well, but without fault in itself, in making loans and advances at the request of the grantor; that the net marketable value of the trust property shrank, due to causes over which the trustee had no control and for which it was not responsible, from about $65,000 or $70,000 at the inception of the trust to less than $50,000 in September, 1934, when the trustee demanded repayment of loans and sums due it.

Although the agreement clearly contemplated that loans should be made by the trustee to William L. Welsh and

bound the trust property as security for their repayment, it does not specify any time in which such loans or other advances or debts are to be repaid. In the case of money loaned or due pursuant to an agreement, it is well established in law that where no fixed time for payment is agreed on, a loan or advance is repayable immediately or on demand. The only essentials are that money was lent, that there was a promise to repay and nonpayment. (*Duke* v. *Southern Hardware Company,* 50 So. 892; *Wallach* v. *Dryfoos,* 125 N.Y.S. 305; *Colburn* v. *First Baptist Church,* 26 N.W. 878.) Presumably, Mr. Welsh was advised of this rule of law by his then counsel before the agreement was entered into. The equity maxim that equity follows the law, is applicable and controlling here. The risk of shrinkage in values was entirely the settlor's own risk. The trustee was without authority under the terms of the grant to sell any portion of the trust estate for the purpose of reducing the indebtedness against the estate, without the written consent of the grantor, and the evidence shows that the grantor consistently withheld his consent to selling any property at a price that could have been obtained for it. No mismanagement or negligence on the part of the trustee was shown and the trial judge was fully justified in concluding from the uncontroverted evidence that the trustee performed all of its contractual obligations, after giving due attention to suggestions and advice of the grantor, over a term of nearly eight years before demanding a repayment of its advances, and that a postponement would further imperil its right to have full repayment. The contract clearly provides that loans made to Mr. Welsh should be charged against the trust property. "It is in the nature of the office of a trustee, whether expressed in the instrument or not, that the trust property shall reimburse him all the charges, and expenses incurred in the execution of the trust." *United States* v.

*Swope,* 16 F. (2d) 215, quoting Lord Eldon in *Worrall* v. *Harford,* 8 Ves. Jr. 2, 8.

The second question, should the court have allowed $4100 for interest accrued between the dates December 25, 1932, and September 24, 1934, has presented some difficulties. The trustee claims that its failure to charge interest on its books or in the quarterly statements it rendered to the grantor during this time does not constitute a waiver of its right to charge this interest at the date it brought suit against him and the other respondents; that its right to have interest was a part of the contract between it and the grantor and its delay in making the charge cannot be determined to be a waiver of its right unless its action has given rise to an estoppel, and that the necessary elements of estoppel are lacking. It cites several authorities in support of the allowance of commissions to trustees upon final account, notwithstanding that interim accounts to beneficiaries had been made in which no charges for commissions were shown.

While waiver and estoppel are often so similar in application as to be convertible, and are generally spoken of as belonging to the same family, in other cases they are initially so distinctly distinguishable that no application of the principles underlying estoppels need enter in to constitute waiver, although waiver effectuates an estoppel *per se.* In other words, waiver can be created without first bringing in the elements necessary to create estoppel, but when waiver is established, it is of itself an estoppel.

In the present case the evidence shows that in 1932 the trustee believed that it would be a disadvantage to it to continue to charge interest into its account against this estate, for the reason that to do so would give it fictitious profits upon which it would be required to pay income taxes; that it was problematical if the value of the estate's property was then sufficient to permit recovery of such in-

terest, if charged, and, in the event it was not collected, it would require the writing off in its books of a substantial loss at some subsequent time, a thing which it evidently did not wish to do, so it elected to make no charge for interest from and after Christmas of 1932, and continued this election down to September 24, 1934.

In the meantime it sent quarterly statements of account to the grantor, as it was required under the terms of the trust agreement to do, and such statements showed no charge for interest. Across the top of its typewritten ledger sheets containing this trust account for the period from December 25, 1932, to September 24, 1934, carbon copies of which were made simultaneously with the original as statements to be sent to the grantor, it wrote, over the initials of Francis Franks, its treasurer and vice-president, that no interest was to be charged on the account until further orders, and on March 29, 1933, after it was discovered that an apparently inadvertent entry had been made in the ledger on the preceding day charging "6½% int on overdraft Dec 26/32 to Mar 25/33 795.33" it caused a credit entry to be made "to cancell int on overdraft charged Mar 28 795.33." The evidence of its intention and the acts of the trustee show a definite abandonment of its right and not an intention to merely postpone the exercise of it. The evidence does not show that it formed any intention after December 25, 1932, of again charging interest, until the day it prepared its suit for foreclosure.

We are of the opinion that the acts and course of conduct of the trustee constituted a waiver and the trustee having consistently adhered to that course for a year and nine months could not later annul the waiver to the detriment of its *cestui que* trust, even though the latter may have contributed nothing to the considerations which prompted it. The trial judge was in error in including the sum of this interest, said to be $4100, in the amount due the trustee.

The respondent contends that the trustee inflicted unnecessary loss and damage upon the estate in paying $6500 for the curtesy interest of J. T. Silva. There is no dispute that Mr. Silva, the stepfather of William L. Welsh, owned a curtesy in all of the property at the time of the inception of the trust, November 12, 1926. The evidence shows that between that time and August, 1930, he had been paid the sum of $500 on account of his share of earnings of the property, but was dissatisfied, and claimed that a full accounting had not been made to him. The birth date of Mr. Silva was said to have been September 23, 1862. It was estimated that his expectancy of life was nine and three-quarters years at the time negotiations for settlement with him were under way. The true value of the property involved was not easily determinable. Mr. Welsh was very desirous of having the curtesy disposed of and in 1929 had employed counsel who filed suit to have it admeasured. He thereafter expressed a desire to have it settled out of court. The settlement made was a compromise and Mr. Welsh was advised by his counsel of proposed terms and by cablegram to his counsel authorized it. While the price paid may at first glance seem to be high, upon computations made upon tables adopted and used generally for determining values of curtesy interests it appears, especially in view of the fact that $1137.15 of the sum was admittedly due Mr. Silva on past rental collections, to have been a fair settlement for the estate, and the trial judge could not have refused to allow the trustee the amount it paid out in closing the settlement made between Mr. Welsh's attorneys and Mr. Silva.

Respondent contends that the trial court committed error in requiring counsel for appellant to proceed with the trial on May 23, 1935, over his counsel's protestation that because of other engagements he was unable to properly present his client's cause. The record shows that on January 19, 1935, by agreement of counsel, the court set the trial for

January 31, 1935; that thereafter the cause, by agreement of counsel, was continued from time to time until May 7, 1935, at which time, by agreement of counsel, trial was commenced. The trial progressed at intervals until May 23, at which time counsel for respondent Welsh requested further time on the grounds that "being actively engaged in other matters I cannot properly represent my client if directed to proceed at this time." The judge stated, after reviewing the record of continuances, that he felt that "the court and other counsel have been imposed upon in this matter and that is the reason for the insistence that we proceed." During the trial counsel for the respondent had permitted himself to become engaged in a different trial in the United States district court. That trial occupied the forenoon of May 23. There is nothing in the record to show why counsel was less prepared for trial on the afternoon of May 23 than he was on May 7 when he announced that he was ready, and we are unable to say that the judge in any manner abused sound and proper discretion in insisting that trial proceed without further interruptions to final determination, after so long a record of continuances. (See *Ter.* v. *Van Dalden,* 33 Haw. 113, 118-120.)

As to the question of error respecting the ruling of the trial judge on the cross-examination of witness John R. Galt, president of the trustee corporation, the respondent contends that the ruling constituted a deprivation of his right of cross-examination. We cannot agree with this view. The record does not show any unreasonable restriction of such right. The witness had testified, in answer to a question upon cross-examination, that he did not consult his company's counsel to see if there was anything as a matter of law that could be done to save the estate against Mr. Welsh himself, and further said in answer to the question if he had taken steps other than to get Mr. Welsh himself to agree to this: "I might say that that was a matter of business

and we would not look to our attorneys for advice on matters of business." He was then asked: "Would you look to your attorneys for advice as to whether or not you could force that situation against Mr. Welsh's unreasonableness?" This question was objected to and was sustained by the judge after argument. The judge held that it was not proper cross-examination, whereupon counsel said: "Then I guess I'll just stop, Your Honor. That is all." Upon reviewing the transcript of evidence, we agree with the trial judge that the question was not proper cross-examination, and there is disclosed no possible basis for the contention that the respondent was deprived of the right of cross-examining this witness. The scope of cross-examination is largely a matter within the administrative discretion of the presiding judge. (*Phillips* v. *Town of Marblehead,* 19 N. E. 547.) Relevancy, in some aspect, must appear to the presiding judge, either as bearing on the issue directly or as tending to determine the weight to be given to the testimony. (*Roche* v. *Baldwin,* 65 Pac. 459.) Nothing was shown that indicated in any manner that an answer to the question objected to could have been of any possible value in the trial, and it was properly excluded.

The judgment and decree of the trial judge is affirmed in all respects except as to the inclusion in the judgment sum interest for the period from December 25, 1932, to September 24, 1934. The sum of such interest as finally charged in the accounts is referred to as $4100, but the evidence on this subject shows it to be "a little under $4,200.00," also "a little over $4,100.00" and we are unable to ascertain from the record the exact amount. It can no doubt be ascertained by examination and computation and then stipulated between the parties without necessity for further hearing of evidence. The circuit judge presiding in equity is directed to modify the decree heretofore entered so as to eliminate this interest and any effect its inclusion in the account may

have had on the account subsequent to September 24, 1934, so that proceedings may go forward under such modified decree.

*H. L. Wrenn* (*Anderson, Marx, Wrenn & Jenks* on the brief) for petitioner.

*C. B. Dwight* (*B. S. Ulrich* and *C. B. Dwight* on the briefs) for respondent William L. Welsh.