[Civ. No. 28771. First Dist., Div. Four. Dec. 6, 1971.]

REUBEN GOLDBERG, Plaintiff and Appellant, v.
CITY OF SANTA CLARA, Defendant and Respondent.

858

**COUNSEL**

Wax, Howard & Searle and Elliot Wax for Plaintiff and Appellant.

Edwin J. Moore, City Attorney, M. Van Smith, Assistant City Attorney, and Michael R. Downey, Deputy City Attorney, for Defendant and Respondent.

## OPINION

**DEVINE, P. J.**—Plaintiff appeals from a judgment of dismissal which is based on an order sustaining a general demurrer without leave to amend. Plaintiff is and at all relevant times was an attorney practicing law in Washington, D.C. The City of Santa Clara became interested in obtaining cancellation of a contract between the city and Pacific Gas and Electric Company under which the city purchased light and power. The city was desirous of substituting electricity from the Central Valley Project at lower rates. The city carried on negotiations with plaintiff for engaging his services as an expert in such matters.

Letters between the two parties appear as exhibits to plaintiff's complaint. Briefly summarized, the six letters between the parties contain the following:

1. Letter from city to plaintiff refers to city's desire to commence formal action against Pacific Gas and Electric Company, says city is interested in hourly fee and asks plaintiff to send formal proposal, states that city is "concerned" with plaintiff's request for mutually agreeable compensation depending on final outcome[1] and says that if the outcome should be favorable to the city with relatively little time expended, city hopes this would be covered by a spelled out minimum fee.

2. Reply from plaintiff, offering to represent city to secure modification of city's contract with P G & E for purchase of power from Central Valley Project and to establish rates and secure refund from P G & E for electricity supplied in 1957, says city could realize savings of $3,000,000 by CVP allotment of power, and that adjustment of P G & E rates would amount to $800,000 or somewhat less, offers hourly rates of $35 or $45 and estimates total if matter is fully litigated before the Federal Power Commission of $35,000 but could run somewhat higher, says that if a solution is arranged with P G & E without hearing, $25,000 would be a reasonable fee. Then follow the paragraphs which are crucial to this case, which read:

"If our efforts through settlement or hearing bring about savings to the City of such magnitude as, in our opinion, would justify additional compensation, we would present our views to the City at that time, but would leave to the City's judgment the additional compensation to be paid. We have no hesitation in relying on the fairness of the City in this regard.

"I hope this proposal provides you with the desired information. If I have somehow failed to give you all the information you sought, please let me know and I will be glad to supplement this letter."

---

[1]The reference undoubtedly (as the parties tacitly agree in their briefs) is to an earlier telephone conversation.

3. & 4.  Letters relating to the city's right (agreed upon) to cancel at any time. (Cancellation never occurred.)

5.  Letter from city to plaintiff authorizing him to file formal action against Pacific Gas and Electric Company with the Federal Power Commission.

6.  Letter from plaintiff to city stating that he will prepare complaint for filing with Federal Power Commission.

These letters were exchanged in the months of May and June of 1965. The invoice sent to the City of Santa Clara for $150,000, which is the amount alleged in the complaint, is dated May 12, 1969, and from it we learn that the contract between the Bureau of Reclamation and the City of Santa Clara was dated November 30, 1965. The invoice is for plaintiff's legal services in securing that contract. It appears from an exhibit to the original complaint that the city has utilized the power allocated to it by the Bureau of Reclamation since December 1, 1965. It is further asserted that by reason of the legal position which plaintiff had developed, he produced this contract in a short time and without recourse to the procedures which had been contemplated. Plaintiff was paid $4,861 for his services, and perhaps expenses, in securing the contract. But P G & E brought suits against the city which plaintiff defended. Plaintiff was paid $45,074 in addition to the $4,861; just which services this larger sum paid for appears to be the subject of some dispute.

■■■ Plaintiff's theory in the present lawsuit is that his legal services in obtaining the Bureau of Reclamation contract have resulted in annual savings to the city of at least $1,000,000, that the savings are of such magnitude as, in his opinion and as a fact, to require additional compensation, and that the city has unreasonably refused to consider or determine the amount of additional compensation and has rejected plaintiff's claim.

The first amended complaint contains three causes of action: the first on written agreement, the second on a theory of unreasonable refusal to make additional payment, and the third on quantum meruit. The written agreement is the reference to "additional compensation," in letter No. 2 above. The action is not based on the minimum fee of $25,000 (perhaps because that fee was included in the $45,074, but whatever the reason, the subject is not before us).

The trial judge, complying with Code of Civil Procedure section 472d, gave as his reason for sustaining the demurrer his conclusion that the first amended complaint fails to state a cause of action. This conclusion in our opinion is correct.

■   It is true, as appellant points out, that a party to a contract may allow the amount of his compensation to be determined by the other party to the contract, and it is true that if the other party, when making the decision which has been left to him, acts in bad faith (usually manifested by setting an unconscionably low figure), the matter may be put to a jury or judge to decide upon the reasonable value. The cases cited by appellant, which state this proposition in whole or in part, are *Foster* v. *Young*, 172 Cal. 317 [156 P. 476]; *Nave* v. *Taugher*, 49 Cal.App. 308 [193 P. 508]; *Hunter* v. *Ryan*, 109 Cal.App. 736 [293 P. 825] and *Roche* v. *Baldwin*, 135 Cal. 522 [65 P. 459, 67 P. 903].

■   But what is put into the power of one party to decide, provided he act with good faith, as recognized in the cases cited above and in some cases from other jurisdictions (see 92 A.L.R. 1396 et seq.), is the *amount to be paid*. The uncertainty about this can often be resolved. What is uncertain in the case before us is much more: not only is the amount which might be paid uncertain, but so is *what it is to be paid for*. This is a very different matter. (See 1 Corbin on Contracts, § 100.) In our case, the extra payment is not sought for extra time; plaintiff was compensated for his time on an agreed hourly basis of $35 (or $45 for court time), and presumably he billed for all of his time. The alleged agreement is on a contingent basis; and what is the contingency? That the "savings" are "of such magnitude as, *in our opinion,* would justify additional compensation." (Italics added.) This is too vague to impose contractual liability. No objective standard is declared. No comparable transaction or practice is referred to. No breaking-point amount is stated. The amount of $3,000,000 plus possible recovery from P G & E of about $800,000 are mentioned in letter No. 2 as potential sums to be saved or repaid, but there is no statement in the letter that those figures are the basis for remuneration, nor does the first amended complaint say that they are. Moreover, although the decision as to amount is declared to be left to the city, which seems at first glance to be a generous reposing of confidence in the party opposite to the lawyer who was drafter of the letter, the decision as to the *basis*—the savings of magnitude—for imposing on the city the duty to act in good faith in fixing additional compensation, is reserved to the asserted promisee. The uncertainty is basic.

There is further uncertainty in the matter of time when the savings of magnitude are to be computed. The relevant paragraph in letter No. 2 refers to "settlement or hearing" as bringing about such savings and says, "we would present our views to the City *at that time*" (italics added). Does this mean the savings (even if they are not basically uncertain, as said above) that might be realized over the whole remaining life of the P G & E contract, to be extrapolated from the conclusion of the settlement or hearing, or the savings which will have occurred at a time years subsequent to

the settlement or hearing? If the latter (as seems likely, from plaintiff's claim on the city, plaintiff contends), at what time? Because plaintiff's claim for additional compensation is based on his letter together with implied acceptance by the city (for the city did not expressly accept), it is required that the essentials be expressed in the letter.

It is proper to discuss briefly appellant's cases. In *Foster* v. *Young,* 172 Cal. 317 [156 P. 476], the object of the contract was the recovery of oil stocks. Plaintiff, an attorney, did recover the stocks for defendant. They were worth $175,000. Plaintiff had agreed to charge a reasonable fee, leaving the amount to defendant. Defendant fixed it at $1,500. The jury found that defendant acted in bad faith, and awarded $8,750 as the reasonable sum. Only the amount was uncertain.

In *Nave* v. *Taugher,* 49 Cal.App. 308 [193 P. 508], also a case involving an attorney's fee, there was a simple objective, the recovery of the reasonable value of defendant Taugher's legal services which had been rendered to a third party. The arrangement, as in the present case, was that Taugher would determine his counsel's fee. He did so, at $200 (the jury awarded $950). The evidence showed a continued purpose of defendant to avoid plaintiff's claim.

In *Hunter* v. *Ryan,* 109 Cal.App. 736 [293 P. 825], defendant wrote that he had a job for plaintiff and would pay her $50 a week and a bonus "to try it out." The object was clear—the acquiring of services; the promisor had reserved to himself the amount of bonus; the contract was performed by a year's work; nothing remained but the fixing of the amount.[2]

In all of these, the thing that was to be paid for was obvious and clearly understood by the parties.

Appellant also cites *Roche* v. *Baldwin,* 135 Cal. 522 [65 P. 459, 67 P. 903]. The gist of the holding in this case is that where it is agreed that the client shall fix the fee of his attorney, an action on quantum meruit will not lie and that the complaint must stand on the subject contract and allege either that the agreement has been repudiated or that the defendant has refused to act under it. The litigation which the attorney had undertaken is not described in the opinion. No such uncertainty of subject matter as exists in the case at bench was present.

---

[2]In the bonus cases, which are fairly numerous, the object is plain: the inducing of a prospective employee to undertake employment, or of an already engaged employee to remain. Where the bonus is unspecified, the amount is the excess, if any, of the reasonable value of the services over the agreed salary. (*Sabatini* v. *Hensley,* 161 Cal. App.2d 172, 175 [326 P.2d 622].)

The terms of the alleged contract for additional compensation are too vague to permit a true meeting of the minds.

The judgment of dismissal is affirmed.

Rattigan, J., and Salsman, J.,* concurred.

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.