751 F.2d 1507
 1 Fed.R.Serv.3d 695, 17 Fed. R. Evid. Serv. 774
 DAVIS & COX, a partnership, Plaintiff-Appellee/Cross-Appellant,
v.
SUMMA CORPORATION, Defendant-Appellant/Cross-Appellee.
Chester C. DAVIS, Plaintiff-Appellee/Cross-Appellant,
v.
SUMMA CORPORATION, Defendant-Appellant/Cross-Appellee.
SUMMA CORPORATION, Defendant-Counterclaimant/Appellant,
v.
DAVIS & COX, a partnership, Chester C. Davis, Maxwell E.
Cox, Howard M. Jaffe and Martin Cook,
Plaintiffs-Counterdefendants/Appellees.
SUMMA CORPORATION, Hughes Aircraft Corporation, Defendants-
Counterclaimants/Appellants,
v.
Chester C. DAVIS, Davis & Cox, Maxwell E. Cox, Howard M.
Jaffe and D. Martin Cook, Counterdefendants/Appellees.
 Nos. 82-5559 to 82-5562.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 7, 1984.
Resubmitted November 1, 1984.
Jan. 18, 1985.
 
 R. Gaylord Smith, Lewis, D'Amato, Brisbois & Bisgaard, Los Angeles, Cal., for plaintiff-appellee/cross-appellant.
 Robert L. Winslow, Irell & Manella, Los Angeles, Cal., for defendant-appellant/cross-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before CHOY and SKOPIL, Circuit Judges, and PRICE*, District Judge.
 CHOY, Circuit Judge:
 
 
 1
 In January 1979, Summa Corporation ("Summa"), a Delaware corporation wholly-owned by Howard R. Hughes, and the Hughes Estate ("the Estate") filed a complaint in Nevada state court against the "palace guard" of nurse-aides, physicians, attorneys and executives who surrounded Hughes during his lifetime and insulated him from contact with the outside world. The complaint alleged that the "palace guard" breached fiduciary duties to Summa and Hughes, misappropriated and wasted Summa's assets, mismanaged Summa and other Hughes companies, and committed legal malpractice. The defendants removed the action to the United States District Court for the District of Nevada.
 
 
 2
 In June 1979, the "palace guard" filed suits against Summa in California, New York, and Utah federal courts. The four actions brought in California were consolidated in the United States District Court for the Central District of California. The New York and Nevada actions were stayed pending the outcome of the California cases. The Utah actions have been dismissed. Summa later entered into a settlement agreement with all the "palace guard" plaintiffs and counterdefendants except Chester C. Davis and his law firm, Davis & Cox.
 
 
 3
 Davis had served as Summa's general counsel for more than sixteen years, from May 1961 until his formal termination in August 1977. He was also a director of Summa from December 1970 until May 26, 1977. In his California action, he alleged (1) a contract claim for services rendered to Summa, Hughes and Hughes' companies from May 1961 to September 30, 1977 under a 1961 agreement whereby he became general counsel to Summa and established offices on its behalf, and (2) a claim for indemnification for litigation expenses incurred in his successful defense of three lawsuits, to which he had been named a defendant because of his connection with Summa.
 
 
 4
 Davis organized the law firm of Davis & Cox, which represented Summa and Hughes in a variety of matters. In a separate complaint, Davis & Cox brought a collection action against Summa for (1) disbursements and fees for services rendered to Summa at Summa's request following Davis' termination as general counsel, and (2) services rendered to Davis for which Summa had a duty to indemnify Davis. These amounts were sought on theories of express contract, quantum meruit, and account stated.
 
 
 5
 Summa filed counterclaims against Davis and Davis & Cox ("the Davis Parties") for conspiracy, professional negligence, corporate mismanagement, and breach of fiduciary duties.
 
 
 6
 The Davis Parties filed third-party complaints for indemnification and contribution against William R. Lummis, administrator of the Estate in Nevada, Texas, Delaware, and Louisiana, and First Interstate Bank of Nevada, co-administrator of the Estate in Nevada and formerly First National Bank of Nevada ("FNB"). Lummis became a director of Summa in June 1976, and subsequently was elected Chairman of the Board. The complaints alleged that the third-party defendants approved, ratified, or participated in the wrongful transactions about which Summa was complaining in its counterclaim against the Davis Parties.
 
 
 7
 The district court awarded Davis $30,000 in deferred compensation for professional services rendered to Summa, $435,224.68 for expenses incurred by him in 1977 on Summa's behalf, and $331,076.59 for indemnification for legal expenses incurred in the successful defense of three lawsuits. The court allowed Summa offsets of $253,203.31, leaving Davis a net award of $543,097.96.
 
 
 8
 The court awarded Davis & Cox $699,027.30 for legal services and disbursements. From this amount, it subtracted $331,076.59, the amount attributable to Davis & Cox's defense of Davis in the three lawsuits, and an offset of $216,235.62, resulting in a net award of $151,715.09.
 
 
 9
 The defendants appeal and the plaintiffs cross appeal from the district court's orders. We affirm in part, reverse in part, and remand to the district court.
 
 I. SUMMA'S APPEAL ISSUES
 
 10
 A. Suppression of Evidence.
 
 
 11
 1. Accounting Evidence.
 
 
 12
 At trial, Summa attempted to defend against the Davis Parties' fee claims by introducing testimony that Davis caused certain improper personal and farm-related expenses to be paid by Summa. The Davis Parties filed a motion to exclude this and other accounting evidence on the ground that their bills constituted "accounts stated" as a matter of law.[1] The district court granted this motion.
 
 
 13
 An account stated is an agreement, evidenced by prior transactions between the contracting parties, that a statement is the true reflection of the balance due to one of the parties. Trafton v. Youngblood, 69 Cal.2d 17, 25, 69 Cal.Rptr. 568, 573-74, 442 P.2d 648, 653-54 (1968); Gleason v. Klamer, 103 Cal.App.3d 782, 786, 163 Cal.Rptr. 483, 485 (1980). The existence of an account stated need not be express and frequently is implied from the circumstances. Zinn v. Fred R. Bright Co., 271 Cal.App.2d 597, 600, 76 Cal.Rptr. 663, 666 (1969). For example, where a creditor renders a statement and the debtor fails to object within a reasonable time, the open account may be superseded by an account stated. Luse v. Peters, 219 Cal. 625, 629, 28 P.2d 357, 359 (1933); Zinn, 271 Cal.App.2d at 600, 76 Cal.Rptr. at 666; California Bean Growers Ass'n v. Williams, 82 Cal.App. 434, 442-43, 255 P. 751, 754-55 (1927).
 
 
 14
 Summa correctly argues that the district court erred in excluding all evidence on the existence of an account stated, and in accepting the accuracy of the bills as a matter of law. Summa could have challenged the bills on a number of grounds. First, an account stated is unenforceable if there was fraud or mistake in the stating of the account. See 1 B. Witkin, Summary of California Law, Sec. 722 at 605 (8th ed. 1973). Summa might have shown that the Davis Parties fraudulently listed improper charges in their statements. The district court excluded the testimony of Davis' former office manager and administrative assistant that on Davis' instructions, he caused improper expenses to be paid from a trust account funded by Summa, and that Davis did not disclose the nature of these payments to Summa. This suppression of pertinent and material facts by a fiduciary might have been a fraud sufficient to impeach reliance on an account stated defense. See Store of Happiness v. Carmona & Allen, Inc., 152 Cal.App.2d 266, 273, 312 P.2d 1104, 1109 (1957); Kinkle v. Fruit Growers Supply Co., 63 Cal.App.2d 102, 114-15, 146 P.2d 8, 14 (1944).
 
 
 15
 Second, the attorney-client relationship between the Davis Parties and Summa provides Summa a further defense. An account stated is subject to a presumption of undue influence when entered between an attorney and client during their fiduciary relationship. Even if the client fails to object to the attorney's billing statements within a reasonable time, the attorney bears the burden of showing that the transaction was fair, regular and entered into voluntarily by the client with full knowledge of the facts. See Trafton, 69 Cal.2d at 28, 69 Cal.Rptr. at 576, 442 P.2d at 656; Gleason, 103 Cal.App.3d at 787, 163 Cal.Rptr. at 485-86. In this case, Summa might have challenged the statements by demonstrating its attorney-client relationship with the Davis Parties, its lack of knowledge of the improper charges, and the Davis Parties' failure to meet their burden of proof.
 
 
 16
 Finally, Summa could have defended against the Davis Parties' billing statements by showing that the statements included amounts for which Summa was not liable. Because accounts stated are "intended to preserve and protect legitimate demands but not to create obligations independent of prior indebtedness," the rendering of an account does not create a liability where no liability existed before the rendering. Trafton v. Youngblood, 69 Cal.2d at 26, 69 Cal.Rptr. at 574, 442 P.2d at 654 (quoting Hemenover v. Lynip, 107 Cal.App. 356, 363, 290 P. 1089, 1092 (1930)); see H. Russell Taylor's Fire Prevention Service, Inc. v. Coca Cola Bottling Corp., 99 Cal.App.3d 711, 727, 160 Cal.Rptr. 411, 422 (1979).
 
 
 17
 The district court's error in excluding all the evidence on the existence of an account stated was not harmless. A trial court's error in excluding evidence in civil actions is harmless if its decision is "more probably than not untainted by the error." Haddad v. Lockheed California Corp., 720 F.2d 1454, 1459 (9th Cir.1983). The district court committed "serious and prejudicial" error in refusing to admit and consider evidence challenging the Davis Parties' billing statements. See Hemenover v. Lynip, 107 Cal.App. at 363, 290 P. at 1091.
 
 
 18
 2. Summaries of Attorneys' Time Sheets.
 
 
 19
 Summa contends that the district court erred in excluding a series of summaries prepared by Summa from time sheets produced by the Davis Parties on the eve of trial. Summa offered the summaries to show that the Davis Parties' bills exceeded the total value of the legal services provided.
 
 
 20
 Under Rule 1006 of the Federal Rules of Evidence, the contents of voluminous writings may be presented in the form of a summary. The purpose of the rule is to allow the use of summaries when the documents are unmanageable or when the summaries would be useful to the judge and jury. United States v. Johnson, 594 F.2d 1253, 1255 (9th Cir.), cert. denied, 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 376 (1979). Summaries must "fairly represent" the underlying documents. See Gordon v. United States, 438 F.2d 858, 876 (5th Cir.), cert. denied, 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 56 (1971). The admission of summaries is left to the discretion of the trial judge. Standard Oil Co. of California v. Moore, 251 F.2d 188, 222-23 (9th Cir.1957); see Barnes Group, Inc. v. C & C Products, Inc., 716 F.2d 1023, 1034 n. 30 (4th Cir.1983); United States v. Foley, 598 F.2d 1323, 1338 (4th Cir.1979), cert. denied, 444 U.S. 1043, 100 S.Ct. 727, 62 L.Ed.2d 728 (1980).
 
 
 21
 Here, the trial judge did not abuse his discretion in sustaining the Davis Parties' objection to Summa's summaries. The judge found that Summa did not make available the summaries nor the underlying documents to the summaries, as required under Rule 1006, until just before trial. The judge also found that at least one of Summa's compilations was not a summary under Rule 1006 because it did not "fairly represent" the underlying documents. It only summarized those documents that, according to Summa's determination, "dealt" with the indemnification issue.
 
 
 22
 B. Right to Jury Trial.
 
 
 23
 The district court judge struck Summa's demand for a jury trial because he had "about 160 pages of instructions" and did not "think a jury could deal with that in any reasonable manner."
 
 
 24
 Summa persuasively argues that the judge erred in denying its jury trial demand. We have held "that there is no complexity exception to the Seventh Amendment right to jury trial in civil cases.... And we do not believe any case is so overwhelmingly complex that it is beyond the abilities of a jury." In re U.S. Financial Securities Litigation, 609 F.2d 411, 432 (9th Cir.1979), cert. denied, 446 U.S. 929, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980).
 
 
 25
 Moreover, the district court's error was not harmless. In civil cases, the harmless error standard applies to a court's wrongful denial of a demand for a jury trial. See Atwood v. Pacific Maritime Ass'n, 657 F.2d 1055, 1058 (9th Cir.1981). The error is harmless if no reasonable jury could have found for the losing party, and the trial court could have granted a directed verdict for the prevailing party. See id.
 
 
 26
 Here, there was sufficient evidence to raise triable issues of material fact. Those issues would have prevented the trial court from granting the Davis Parties a directed verdict. For example, in its contract claim, the Davis Parties argued that its bills constituted accounts stated. As previously discussed, an account stated is an agreement based on prior transactions between the parties that the items of the account are true and that the balance struck is due and owing from one party to another. Gleason v. Klamer, 103 Cal.App.3d 782, 786, 163 Cal.Rptr. 483, 485 (1980). Summa presented evidence that its executives objected to the Davis Parties' billing statements and refused to pay them in full until Summa's accountants could examine Davis' records. This evidence raised questions of fact as to whether Summa acquiesced in the statements and whether the bills truly reflected the balance due.
 
 
 27
 C. Ordering Separate Trials.
 
 
 28
 The district court severed Summa's counterclaims and some affirmative defenses from the trial of the issues raised by the Davis Parties' complaint. This was because those counterclaims and affirmative defenses raised the same issues. Summa contends that the severance order put it in the "impossible situation" of not being able to defend against the Davis Parties' fee claims because "most of the facts upon which it relied to defeat the Davis Parties' fee claims were also pleaded in its counterclaims."
 
 
 29
 The district court has broad discretion to order separate trials under Rule 42(b) of the Federal Rules of Civil Procedure. We may set aside a severance order only for an abuse of discretion. See Airlift International, Inc. v. McDonnell Douglas Corp., 685 F.2d 267, 269 (9th Cir.1982); United States v. 1,071.08 Acres of Land, 564 F.2d 1350, 1352 (9th Cir.1977).
 
 
 30
 The district court in this case did not abuse its discretion. Most of the issues raised in the Davis Parties' complaint were different from those raised by Summa's counterclaims. In addition, severance of the counterclaims served judicial efficiency. Although the parties had completed discovery on the Davis Parties' complaint issues, discovery on the counterclaim issues was not finished. Without the severance order, the trial of the complaint issues would needlessly have been delayed for a substantial period.
 
 
 31
 D. Dismissal of Summa's Counterclaims.
 
 
 32
 1. Air West Counterclaim.
 
 
 33
 Summa counterclaimed against the Davis Parties for malpractice in connection with their handling of Summa's acquisition of Air West Airlines, Inc. ("Air West") and the ensuing criminal and civil litigation. The district court dismissed Summa's Air West counterclaim, giving res judicata and collateral estoppel effect to a ruling of Judge Zirpoli in a prior action. Judge Zirpoli denied the motions of Summa, the Estate and Hughes Air Corporation ("Hughes Air") to vacate default judgments. The district court reasoned that, in denying the motions, Judge Zirpoli found that the Davis Parties did not commit malpractice. Summa challenges the district court's application of res judicata and collateral estoppel in barring its counterclaim.
 
 
 34
 In the prior action, Air West shareholders brought suit against Hughes, Hughes Air Corporation, and Summa for securities act violations in the 1970 acquisition of Air West by Hughes Air. See Anderson v. Air West, Inc., 542 F.2d 1090 (9th Cir.1976). Judge Zirpoli, the presiding judge, entered default orders against Summa, the Estate, and Hughes Air for Hughes' failure to comply with a court order requiring his deposition, and we affirmed. Id. The parties moved to vacate the default orders on the ground that Davis was guilty of misconduct in not adequately advising Hughes of the necessity of appearing for the deposition, concealing information on Hughes' mental competence and drug usage, and permitting a conflict of interest between Summa and himself to arise.
 
 
 35
 Judge Zirpoli denied Summa's and Hughes Air's motions, and the Estate then filed a notice of withdrawal without prejudice. Judge Zirpoli struck this notice and denied the Estate's motion for lack of prosecution.
 
 
 36
 a. Res Judicata.
 
 
 37
 A final judgment on the merits bars a subsequent action between the same parties or their privies over the same cause of action. Derish v. San Mateo-Burlingame Board of Realtors, 724 F.2d 1347, 1349 (9th Cir.1983); Board of Trustees of Carpenters Pension Trust Fund For Northern California v. Reyes, 688 F.2d 671, 673 (9th Cir.1982), cert. denied, 462 U.S. 1120, 103 S.Ct. 3088, 77 L.Ed.2d 1349 (1983). The judgment prevents litigation of all grounds and defenses that were or could have been raised in the action. Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980).
 
 
 38
 The district court improperly applied res judicata to preclude litigation of Summa's counterclaim. Summa and the Davis Parties were not true adversarial parties in the Air West case. None of the Davis Parties was a formal party to the motion to vacate. Significantly, even if the Davis Parties could be viewed as parties to the motion, neither Summa nor the Davis Parties filed a formal claim against each other. See American Triticale, Inc. v. Nytco Services, Inc., 664 F.2d 1136, 1147 (9th Cir.1981) (codefendants not precluded from pursuing claims against each other where they did not file cross-claims in the original action). Res judicata is inapplicable because there was no adjudication "between the same parties on any cause of action let alone the same cause of action." Id. (citation omitted); see 1B J. Moore, J. Lucas & T. Currier, Moore's Federal Practice p 0.411 at 399 (2d ed. 1984).
 
 
 39
 In addition, Summa could not have joined its malpractice claim to the motion to vacate. Summa could only have filed a cross-claim against the Davis Parties for a claim "arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action." Fed.R.Civ.P. 13(g). Summa's malpractice claim against the Davis Parties was not the subject of Air West's original suit or of any counterclaim. Summa, therefore, should not be barred from raising that claim here. See Restatement (Second) of Judgments Secs. 25 comment f, 26 comment c (1982) (claimant should not be precluded in second action from raising claims which he was unable to present in first action).
 
 
 40
 b. Collateral Estoppel.
 
 
 41
 Collateral estoppel precludes relitigation of issues actually litigated and necessarily determined by a court. See Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); United States v. Geophysical Corp., 732 F.2d 693, 697 (9th Cir.1984); In re Gottheiner, 703 F.2d 1136, 1139 (9th Cir.1983). The party asserting the estoppel bears the burden of pleading and proving what issues were decided in his favor in the previous action. Hernandez v. City of Los Angeles, 624 F.2d 935, 937 (9th Cir.1980).
 
 
 42
 If a court does not make specific findings, the party must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action. Hernandez, 624 F.2d at 937; United States v. Lasky, 600 F.2d 765, 769 (9th Cir.), cert. denied, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979). Necessary inferences from the judgment, pleadings and evidence will be given preclusive effect. See 1B J. Moore, J. Lucas & T. Currier, Moore's Federal Practice p 0.443 (2d ed. 1984). If there is doubt, however, collateral estoppel will not be applied. Harris v. Jacobs, 621 F.2d 341, 343 (9th Cir.1980). If the decision could have been rationally grounded upon an issue other than that which the defendant seeks to foreclose from consideration, collateral estoppel does not preclude relitigation of the asserted issue. See Ashe v. Swenson, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970).
 
 
 43
 Whether collateral estoppel is available is a mixed question of law and fact in which the legal issues predominate. The question of its availability is subject to our de novo review. United States v. Geophysical Corp., 732 F.2d 693, 697 (9th Cir.1984). Once we determine that collateral estoppel is available, the actual decision to apply it is left to the district court's discretion. Id.
 
 
 44
 Although the malpractice issue may have been litigated in the Air West motion to vacate, Judge Zirpoli did not necessarily make a finding on this issue. He denied the motions because he did not find "good cause" or misconduct "justifying relief" under Rules 55(c) and 60(b) of the Federal Rules of Civil Procedure. He may have concluded that the Davis Parties committed malpractice, but that it was not a "reason justifying relief." In fact, Judge Zirpoli noted that the Estate had a possible action against Davis for fraud, negligence or malpractice.
 
 
 45
 We should not speculate whether Judge Zirpoli found the Davis Parties innocent of Summa's malpractice allegations. See United States v. Lasky, 600 F.2d at 769. The Davis Parties have not carried their burden of showing that the denial of Summa's motion to vacate necessarily decided the malpractice issue. See Hernandez v. City of Los Angeles, 624 F.2d at 937-38. Because collateral estoppel was not available, the district court erred in precluding Summa from litigating the Air West counterclaim for malpractice.
 
 
 46
 2. Dismissal of Summa's Remaining Counterclaims.
 
 
 47
 The district court dismissed Summa's remaining counterclaims against the Davis Parties as time-barred under section 340.6 of the California Code of Civil Procedure. Section 340.6 provides a one-year limitation period for an action against an attorney for a wrongful act or omission arising in the performance of professional services.[2] If the conduct is only "tangentially related" to the performance of legal services, section 340.6 does not apply. Von Rott v. Johnson, 148 Cal.App.3d 608, 612-13, 196 Cal.Rptr. 55, 58 (1983).
 
 
 48
 Summa's claims accrued at the earliest in May 1976. Under California law, the limitation period for an action for fraud brought by a corporation is tolled for the period that those responsible for the fraud control the corporation. San Leandro Canning Co. v. Perillo, 211 Cal. 482, 487, 295 P. 1026, 1028 (1931); Admiralty Fund v. Peerless Insurance Co., 143 Cal.App.3d 379, 387, 191 Cal.Rptr. 753, 758 (1983); Burt v. Irvine Co., 237 Cal.App.2d 828, 866-67, 47 Cal.Rptr. 392, 417 (1965). The district court found that the claims accrued at least by May 1977, when Lummis removed Davis and others responsible for the alleged fraud from Summa's board. The Davis Parties, however, presented some evidence that those directors controlled Summa only until May 1976, when Lummis became Summa's sole shareholder, or until August 1976, when Lummis elected himself chairman of the board and placed two of his men on the board.
 
 
 49
 Summa first commenced its action against the Davis Parties on January 24, 1979, less than three years after the earliest possible accrual of its claims in May 1976, when it brought a state court action against them for breach of fiduciary duties. Although federal law controls the date on which the statutory period begins to run, state law controls the tolling of its statute of limitation if not inconsistent with federal law. Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030, 1033 (9th Cir.1983). California equitably tolls the limitation period during the pendency of an earlier action if there is "timely notice, and lack of prejudice to the defendant, and reasonable and good faith conduct on the part of the plaintiff." Id. (citing Jackson v. Hayakawa, 605 F.2d 1121, 1127 (9th Cir.1979) (quoting Addison v. State, 21 Cal.3d 313, 319, 146 Cal.Rptr. 224, 227, 578 P.2d 941, 943-44 (1978)), cert. denied, 445 U.S. 952, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980)). In this case, Summa's state action gave the Davis Parties adequate notice of its intention to pursue its claims. The district court erred in dismissing Summa's remaining counterclaims against the Davis Parties.
 
 
 50
 a. Xanadu Hotel Counterclaim.
 
 
 51
 Summa charged Davis with breaching his fiduciary duties as a director of Summa, with wasting Summa's assets, and with mismanaging its operations in failing to obtain an adequate appraisal of the Xanadu Hotel's value and authorizing its purchase at an inflated price.
 
 
 52
 The district court erred in applying section 340.6 to this counterclaim. Although Davis performed some legal services in connection with the purchase of the hotel, Davis authorized the purchase in his corporate capacity. Just as "[o]ne need not be an attorney to act as pledgeholder," Von Rott v. Johnson, 148 Cal.App.3d at 613, 196 Cal.Rptr. at 58, Davis need not have been an attorney to have committed the alleged offenses.
 
 
 53
 Moreover, the gravamen of a complaint and the nature of the right sued on, rather than the form of the action or relief demanded, determines which statute of limitation applies. See Robuck v. Dean Witter & Co., 649 F.2d 641, 645 n. 2 (9th Cir.1980) (applying California law); Day v. Greene, 59 Cal.2d 404, 411, 29 Cal.Rptr. 785, 789, 380 P.2d 385, 389 (1963); Schneider v. Union Oil Co. of California, 6 Cal.App.3d 987, 993, 86 Cal.Rptr. 315, 318 (1970). The gravamen of Summa's counterclaim was Davis' breach of fiduciary duties as a director, rather than his professional malpractice.
 
 
 54
 The district court should have applied section 343, the four-year general statute of limitation. Section 343 applies to actions founded upon a breach of a fiduciary duty. See Robuck v. Dean Witter & Co., 649 F.2d at 644.[3] Section 343 provides that "[a]n action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued." Cal.Code Civ.Proc. Sec. 343.
 
 
 55
 Applying section 343, the district court erred in dismissing Summa's Xanadu Hotel counterclaim. As earlier discussed, Summa commenced its action in state court in January 1979, less than three years after its counterclaim's earliest possible accrual in May 1976. Summa, therefore, initially brought its claim well within the four-year statutory period of section 343.
 
 
 56
 b. Corporate Aircraft Counterclaim.
 
 
 57
 Summa charged Davis with corporate waste, mismanagement, and breach of fiduciary duties in the use of corporate aircraft for personal reasons. Section 340.6 does not apply because the gravamen of this counterclaim was not any wrongful act or omission arising from the performance of legal services. Although Summa, in part, may have authorized Davis to use the aircraft as Summa's general counsel, his use was only "tangentially related" to the performance of legal services. Summa's allegations of corporate waste, mismanagement and breach of fiduciary duties arose in large part out of Davis' alleged misconduct in his corporate capacity.
 
 
 58
 Because the gravamen of this corporate aircraft counterclaim was Davis' breach of fiduciary duties as director, the district court should have applied section 343, the general four-year statute of limitation. Therefore, the district court should not have dismissed the counterclaim because it was brought in January 1979, less than three years after its earliest accrual in May 1976.
 
 
 59
 c. Paul Jordan Litigation Counterclaim.
 
 
 60
 Summa charged the Davis Parties with legal malpractice in representing Summa in its lawsuit against Paul Jordan. The Davis Parties allegedly failed to serve and return the summons within the three-year period prescribed by the California Code of Civil Procedure. Summa admits that this claim is covered by section 340.6.
 
 
 61
 Summa argues that the district court should not have summarily dismissed its counterclaim because there was a material dispute of fact over the date on which Summa discovered or should have discovered the wrongful conduct. The district court found that "Summa discovered or should have discovered ... the material facts comprising the Paul Jordan claim not later than in or about October 1973." Summa, however, contends that the evidence showed that it did not discover the claim until May 1978, and thus that the district court should not have dismissed the claim, brought in January 1979, less than one year after its discovery.
 
 
 62
 The Davis Parties, however, persuasively argue that Summa's evidence raised no material dispute as to when Summa discovered or should have discovered the counterclaim. The evidence showed that a Davis Party attorney informed Summa in writing in October 1973 of the possible dismissal of the Paul Jordan litigation, and that Summa instructed the attorney to let the action "die." The district court, therefore, properly dismissed the counterclaim, initially brought in January 1979, over five years after its accrual in October 1973.
 
 
 63
 d. Dismissal of Summa's Counterclaims as a Defense.
 
 
 64
 Summa argues that the district court erred in denying its motion to permit its counterclaims as a defense to the Davis Parties' claims. As discussed, the court correctly dismissed Summa's Paul Jordan litigation counterclaim as time-barred under section 340.6. It is not clear, however, whether the court should have permitted the Paul Jordan claim as a defense to the Davis Parties' action.
 
 
 65
 Under section 431.70 of the California Code of Civil Procedure,
 
 
 66
 Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations.
 
 
 67
 Cal.Code Civ.Proc. Sec. 431.70.
 
 
 68
 It is not clear from the record whether Summa's Paul Jordan claim ever coexisted with the Davis Parties' claims. The evidence showed that the Davis Parties' action accrued in June 1977. The district court failed to resolve whether the statute of limitation period for Summa's Paul Jordan claim began to run in May 1976, August 1976, or May 1977. If it began in May 1976, then the Paul Jordan claim would have expired in May 1977, and the claims would never have coexisted. If, however, the statutory period began to run in either August 1976 or May 1977, then the Paul Jordan claim would not have expired until August 1977 or May 1978 and would have coexisted with the Davis Parties' claims for a period of time.
 
 
 69
 On remand, the district court should determine when Summa's Paul Jordan claim and the Davis Parties' claims accrued, and whether those claims ever coexisted for the purposes of section 431.70.
 
 
 70
 E. Expenses.
 
 
 71
 Summa argues that the district court improperly awarded the Davis Parties over $435,000 for expenses. It contends that the issue was never pleaded or tried.
 
 
 72
 Rule 15(b) of the Federal Rules of Civil Procedure permits the amendment of pleadings to conform to the evidence when the parties expressly or impliedly consent to the trial of unpleaded issues. The rule provides that issues actually tried by the consent of the parties are treated in all respects as if they had been raised in the pleadings, even if the parties have failed formally to amend the pleadings. See Consolidated Data Terminals v. Applied Digital Data Systems, Inc., 708 F.2d 385, 396 (9th Cir.1983); Dunn v. Trans World Airlines, Inc., 589 F.2d 408, 412-13 (9th Cir.1978). If an amendment should have been made, we will presume that it has been made. Id. at 413 (quoting Decker v. Korth, 219 F.2d 732, 739 (10th Cir.1955)). The question whether the parties have impliedly consented to the trial of an issue lies within the discretion of the trial court. See Save Lake Washington v. Frank, 641 F.2d 1330, 1340 (9th Cir.1981).
 
 
 73
 In this case, although the Davis Parties never pleaded any claim for expenses nor amended their complaint, the parties impliedly consented to trying the issue. The Davis Parties presented evidence of a 1961 agreement covering the reimbursement of expenses and of billing statements for expenses. Summa presented evidence that Davis caused improper expenses to be included in the billing statements. The district court did not abuse its discretion in finding that the parties tried the issue of reimbursable expenses by consent and in making an award to the Davis Parties for those expenses.
 
 
 74
 F. Interest.
 
 
 75
 The district court awarded the Davis Parties prejudgment and postjudgment interest at 18% per annum, which the court stated was "the prime rate of Citibank, New York, New York as of October 29, 1981."
 
 
 76
 Summa persuasively argues that the district court erred in awarding interest at the prime rate. In diversity cases, state law governs the award of prejudgment and postjudgment interest. See Michael Regan Co. v. Lindell, 527 F.2d 653, 659 (9th Cir.1975). The prejudgment interest rate for the detention of money in California is limited to the legal rate of 7% per annum. Cal. Const. Art. 15, Sec. 1; see McConnell v. Pacific Mutual Life Insurance Co., 205 Cal.App.2d 469, 481, 24 Cal.Rptr. 5, 13 (1962); Gray v. American Surety Co., 129 Cal.App.2d 471, 472-73, 475, 277 P.2d 436, 437-39 (1954). Postjudgment interest is limited to 10% per annum. Cal.Code Civ.Proc. Sec. 685.010.[4]
 
 
 77
 Summa also complains that the district court awarded interest on the gross amount due rather than on the net amount due. Under California law, a court may award interest only on the balance found to be due after deduction of offsets. Hansen v. Covell, 218 Cal. 622, 631, 24 P.2d 772, 776 (1933); Leaf v. Phil Rauch, Inc., 47 Cal.App.3d 371, 376, 120 Cal.Rptr. 749, 752 (1975). Our review of the record, however, indicates that the district court did compute the interest on the net amount due. The court awarded Davis prejudgment interest on an aggregate principal of $543,097.96. See C.R. 791. This amount represented the gross amount due ($796,301.27), less credits ($253,203.31). See C.R. 621 at 22. The court also awarded Davis & Cox prejudgment interest on an aggregate principal of $151,715.09. See C.R. 791. This amount represented the gross amount due ($699,027.30), less credits for amounts received ($216,235.62) and for amounts used in defense of Davis in certain litigation for which Davis was reimbursed ($331,076.59). See C.R. 621 at 19-20.
 
 
 78
 The district court erred in awarding 18% prejudgment and postjudgment interest, but correctly calculated the gross amounts subject to interest.
 
 
 79
 G. Remand to a Different Judge.
 
 
 80
 Summa argues that we should remand the case to a different judge. In the absence of proof of personal bias, we may remand to a new district court judge only under "unusual circumstances." United States v. Arnett, 628 F.2d 1162, 1165 (9th Cir.1979) (quoting United States v. Robin, 553 F.2d 8, 10 (2d Cir.1977) (en banc)). In making this determination, we may consider
 
 
 81
 (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.
 
 
 82
 United States v. Arnett, 628 F.2d at 1165 (quoting United States v. Robin, 553 F.2d at 10). The first two of these factors are of equal importance, and a finding of one of them could support a remand to a different judge. See United States v. Alverson, 666 F.2d 341, 349 (9th Cir.1982).
 
 
 83
 Summa has not demonstrated personal bias or "unusual circumstances" to warrant our remand to another judge. We cannot reasonably expect Judge Real to have substantial difficulty in ridding himself of previously expressed views or findings determined to be erroneous. Summa argues that Judge Real was adamant in making erroneous rulings. A district court judge's adamance in making an erroneous ruling may justify remanding the case to a different judge. See United States v. Larios, 640 F.2d 938, 943 (9th Cir.1981); United States v. Doe, 655 F.2d 920, 929 (9th Cir.1980); United States v. Ferguson, 624 F.2d 81, 83 (9th Cir.1980). Summa, however, has not shown that Judge Real's erroneous rulings would affect his ability to conform to this panel's decision or that his rulings stemmed from a personal bias against Summa. It has not shown that Judge Real made those rulings knowing that they were erroneous. The bare fact that Judge Real has committed errors does not support our deviation from the "usual remedy" of remanding the case to the original trial judge. See United States v. Arnett, 628 F.2d at 1165.
 
 
 84
 The appearance of justice will not be severely impaired if we do not remand to another judge. Judge Real's erroneous rulings did not evidence a steadfast refusal to consider Summa's interests. In fact, the Davis Parties were on the losing end of many of Judge Real's rulings.
 
 
 85
 The substantial waste of time and duplication of effort that would result from our remand to a different judge militates against such remand. The action involves a tangled web of claims and parties. It involves the Davis Parties as plaintiffs, counterdefendants and third-party plaintiffs, Summa as defendant and counterclaimant, and Lummis and FNB as third-party defendants. In addition, the claims and counterclaims are numerous and involve complex legal and factual issues. Summa has alleged claims of breach of corporate fiduciary duties, corporate waste and mismanagement, and legal malpractice. The Davis Parties have alleged fee and indemnification claims against Summa, and contribution and indemnification claims against third-party defendants Lummis and FNB. A new judge would need a significant amount of time just to become familiar with these parties and claims. This case is unlike those cases where a remand to a new sentencing judge would entail a minimal duplication of effort and waste. See United States v. Doe, 655 F.2d at 929; United States v. Ferguson, 624 F.2d at 84.
 
 II. DAVIS PARTIES' APPEAL ISSUES
 
 86
 A. Deferred Compensation Claim.
 
 
 87
 The district court found that Davis and Summa orally agreed in 1961 "that Summa would compensate Davis for his professional services at an annual rate of not less than $120,000, with reasonable annual upward adjustments in the rate of compensation." Davis brought his action on June 22, 1979. The court held that the applicable two-year statute of limitation for oral contracts, section 339 of the California Code of Civil Procedure, barred Davis' claim for deferred compensation prior to June 22, 1977.[5] Accordingly, the court awarded Davis $30,000 in deferred compensation for the three-month period prior to the effective date of his termination on September 30, 1977. The court did not allow any amount for upward adjustments.
 
 
 88
 Davis correctly argues that the district court erred in denying him recovery of deferred compensation prior to June 22, 1977. A compensation claim for services rendered accrues at the end of the performance of those services if the services are continuously rendered, and if there is "some evidence" that the parties intended such a compensation arrangement, and if the services are continuously rendered. See Mitchell v. Towne, 31 Cal.App.2d 259, 263, 87 P.2d 908, 911 (1939).
 
 
 89
 Here, there was some evidence that the parties intended payment of the deferred compensation upon Davis' termination. The district court found that Davis informed Summa that he was willing to receive less than the agreed compensation with the understanding that the balance would be payable to him upon retirement or other termination of his services. The district court also found that, accordingly, Summa made payments to Davis in amounts less than the agreed compensation. Because Davis could only make a demand for the deferred compensation upon termination, his claim to that compensation did not accrue until his termination on September 30, 1977. See Carrasco v. Greco Canning Co., 58 Cal.App.2d 673, 675, 137 P.2d 463, 465 (1943). Davis, therefore, brought his claim within two years of its accrual, and the court should have awarded Davis compensation even for those amounts initially due prior to June 22, 1977.
 
 
 90
 Davis correctly argues that he did not waive his right to make a claim for deferred compensation by not earlier asserting his claim. He and Summa understood that the deferred compensation would only accrue upon his termination. Davis did not voluntarily relinquish a known right because he had no right to the compensation until his termination on September 30, 1977. See Henderson v. Drake, 42 Cal.2d 1, 5, 264 P.2d 921, 923 (1953) (en banc).
 
 
 91
 Moreover, the district court should have allowed Davis recovery of "reasonable upward adjustments." Although the court found an agreement for the adjustments[6], it did not allow the adjustments because it found that Davis and Summa never agreed to a specific amount of reasonable upward adjustments. Davis, however, offered evidence of the reasonable value of his services. The district court should have enforced the adjustments provision by determining the reasonable value of his services and adjusting his compensation accordingly.
 
 
 92
 B. Pension Plan Claims.
 
 
 93
 Under his authority to hire attorneys and support personnel and to fix their compensation and employment benefits, Davis implemented a retirement plan for the benefit of his employees. Summa initially funded the plan with $100,000 but refused to reimburse Davis for his additional funding of the plan subsequent to his termination. Although the district court found that Summa "remains responsible for the funding when due of the unfunded prior service benefits which have vested," the court denied Davis recovery because a "sufficient showing has not been made that Davis has paid the unfunded amounts or that they have matured in substance and amount as obligations which are payable by Summa."
 
 
 94
 Davis wrongly argues that the district court should have "entered a judgment requiring Summa to pay whatever amount became due in respect of prior service when it became due." Davis did not prove that any amounts ever "became due" under the pension plan, nor that the amounts ever "matured in substance and amount." The district court properly denied the claim and was not required to enter a judgment for Davis.
 
 
 95
 In response to Summa's counterclaims, three of the Davis Parties, Cox, Jaffe and Cook[7], brought "counterclaims in reply" as beneficiaries of the pension plan against Summa for ERISA violations arising out of Summa's failure to reimburse Davis for his funding of the plan. The district court properly exercised its discretion in dismissing these counterclaims.
 
 
 96
 Although the Federal Rules of Civil Procedure do not expressly authorize a plaintiff's bringing of "counterclaims in reply" to a defendant's counterclaims, the weight of authority allows the plaintiff to file such pleadings if the counterclaims in reply are compulsory, but denies them if permissive.[8] See Electroglas, Inc. v. Dynatex Corp., 473 F.Supp. 1167, 1171-72 (N.D.Cal.1979); Southeastern Industrial Tire Co. v. Duraprene Corp., 70 F.R.D. 585, 588 (E.D.Pa.1976). A counterclaim in reply is compulsory if it arises out of the transaction or occurrence that is the subject matter of the defendant's counterclaim. See Fed.R.Civ.P. 13(a); Electroglas, Inc. v. Dynatex Corp., 473 F.Supp. at 1171.
 
 
 97
 Here, the district court implicitly found, and a review of the counterclaims indicates, that the Davis Parties' counterclaims in reply were permissive. Summa's counterclaim against the Davis Parties for malpractice and breach of fiduciary duties does not arise out of the same transaction as the Cox, Jaffe, and Cook counterclaims in reply for nonfunding of the pension plan.C. Dismissals of Claims.
 
 
 98
 1. Conspiracy Claim.
 
 
 99
 Davis argues that the district court erred in dismissing his conspiracy claim against Summa. Davis alleged that Lummis and Summa conspired to coerce Davis, as a member of the Howard Hughes Medical Institute (HHMI), to relinquish HHMI's claim to the Estate. Lummis would have been the principal intestate heir to the Estate.
 
 
 100
 The trial court properly dismissed the claim. Davis charged Summa and Lummis with conspiring to terminate his employment and to withhold payment of deferred compensation, legal fees, expenses, and indemnification. If Lummis commited these acts, he did so in his capacity as Summa's chief corporate officer. Lummis, therefore, could not as a matter of law have conspired with his own corporation to commit these corporate acts. See Gruenberg v. Aetna Insurance Co., 9 Cal.3d 566, 576, 108 Cal.Rptr. 480, 487, 510 P.2d 1032, 1039 (1973) (en banc); Mayes v. Sturdy Northern Sales, Inc., 91 Cal.App.3d 69, 77-78, 154 Cal.Rptr. 43, 48-49 (1979); Wise v. Southern Pacific Co., 223 Cal.App.2d 50, 72, 35 Cal.Rptr. 652, 665 (1963).
 
 
 101
 2. Third-Party Complaints.
 
 
 102
 The district court dismissed the Davis Parties' third-party complaints against Lummis for lack of in personam jurisdiction, and against FNB for improper venue.
 
 
 103
 a. Lummis Dismissal.
 
 
 104
 A district court may assert personal jurisdiction over a nonresident defendant under "general" or "limited" jurisdiction. If the nonresident defendant's activities within the forum state are "substantial" or "continuous and systematic," there is a sufficient relationship between the defendant and the state to support general personal jurisdiction even if the cause of action is unrelated to the defendant's forum activities. Perkins v. Benquet Consolidated Mining Co., 342 U.S. 437, 446-47, 72 S.Ct. 413, 418-19, 96 L.Ed. 485 (1952); Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1287 (9th Cir.1977).
 
 
 105
 If, however, the defendant's activities are not so pervasive as to subject him to general jurisdiction, the jurisdiction question turns on an evaluation of the nature and quality of the defendant's contacts in relation to the cause of action. A court may assert limited personal jurisdiction with respect to particular claims under three conditions:
 
 
 106
 (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.
 
 
 107
 Data Disc, Inc., 557 F.2d at 1287.
 
 
 108
 In this case, the district court lacked general jurisdiction over Lummis. His activities within the forum state, California, were not "substantial" nor "continuous and systematic." In his individual capacity, Lummis made occasional vacation trips to California. In his capacity as administrator of the Estate, Lummis made a few trips to California to locate Hughes' will and to appear on behalf of the Estate in certain litigation. As an officer and director of Summa, Lummis occasionally traveled to California to represent Summa. These business and vacation trips to California, amounting to an average of about three weeks a year, did not constitute "conducting business" in California to support a finding of general jurisdiction. See Rocke v. Canadian Automobile Sport Club, 660 F.2d 395, 399 (9th Cir.1981). Moreover, the "nature and quality" of the recreational visits weigh against our finding of general jurisdiction over Lummis. See Thos. P. Gonzalez Co. v. Consejo Nacional, 614 F.2d 1247, 1252 (9th Cir.1980).
 
 
 109
 The district court also lacked limited jurisdiction over Lummis. The Davis Parties' claims against Lummis did not arise out of Lummis' activities in California. The essence of their claims was Lummis' exploitation of his positions as officer and director of Summa and administrator of the Estate. Lummis' alleged wrongful conduct took place outside California. Although Lummis made business trips to California in his corporate capacity, the Davis Parties have not shown any connection between these visits and their claims.
 
 
 110
 b. FNB Dismissal.
 
 
 111
 The district court properly dismissed the third-party complaint against FNB for lack of venue. The governing venue statute confers venue over national banking associations only "in any district or Territorial court of the United States held within the district in which such association may be established." 12 U.S.C. Sec. 94, amended by Pub.L. No. 97-320, 96 Stat. 1512 (1982) and Pub.L. No. 97-457, 96 Stat. 2509 (1983).[9] Section 94 is mandatory and exclusive. Radzanower v. Touche Ross & Co., 426 U.S. 148, 152, 96 S.Ct. 1989, 1992, 48 L.Ed.2d 540 (1976); Bechtel v. Liberty National Bank, 534 F.2d 1335, 1339 (9th Cir.1976). For purposes of section 94, California is not FNB's place of establishment. FNB, therefore, may not be sued in California under the venue statute. See Radzanower, 426 U.S. at 151 n. 2, 96 S.Ct. at 1992 n. 2.[10]
 
 
 112
 D. Attorneys' Fees and Costs.
 
 
 113
 The district court denied the Davis Parties' claim for attorneys' fees and costs despite its earlier ruling that Davis was "entitled to recover from Summa his attorneys fees and expenses incurred in establishing his right to indemnification with respect to" three lawsuits against Summa. We affirm the district court's denial of these claims.
 
 
 114
 Delaware law controls the Davis Parties' indemnification rights because Summa is a Delaware corporation. Claims involving "internal affairs" of corporations, such as the breach of fiduciary duties, are subject to the laws of the state of incorporation. See Weiss v. Kay Jewelry Stores, Inc., 470 F.2d 1259, 1268 (D.C.Cir.1972); Wilshire Oil Co. of Texas v. Riffe, 409 F.2d 1277, 1283 & n. 16 (10th Cir.1969); see generally Restatement (Second) of Conflict of Laws Secs. 302, 309 (1971). Here, corporate indemnification involves issues peculiar to the affairs of a corporation. Indemnification of corporate directors, like the fiduciary obligations of corporate directors, is an "internal affair" of a corporation and is therefore subject to the law of the state of incorporation.
 
 
 115
 Applying Delaware law, we affirm the district court's denial of the Davis Parties' motion for attorneys' fees and costs. Attorneys' fees may not ordinarily be recovered in the absence of express statutory authority or contractual provision for such an award. Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 717, 87 S.Ct. 1404, 1406, 18 L.Ed.2d 475 (1967). The Delaware statute, unlike the California statute, does not provide for the recovery of attorneys' fees and expenses incurred in establishing an indemnity claim. Compare Del.Code Corp. Sec. 145 with Cal.Corp.Code Sec. 317(a), (d). It requires a corporation to indemnify its directors, officers, employees and agents against expenses incurred in connection with the successful defense of certain actions against them, but does not expressly indemnify them against expenses incurred in establishing the right to indemnification. See Del.Code Corp. Sec. 145(c).[11] Moreover, Summa's by-laws do not provide for the recovery of such expenses.
 
 CONCLUSION
 
 116
 With respect to Summa's appeal, the district court erred in suppressing Summa's evidence challenging the Davis Parties' billing statements, in denying its motion for a jury trial, in awarding the Davis Parties interest at the prime rate, and in dismissing its Air West, Xanadu Hotel, and Corporate Aircraft counterclaims. We remand to the district court on these points.
 
 
 117
 In addition, on remand, the district court must determine whether it should allow Summa's Paul Jordan litigation claim as a defense to the Davis Parties' claims.
 
 
 118
 With respect to the Davis Parties' cross appeal, the court erred in applying the statute of limitation to deny Davis part of his claim for deferred compensation and in not making an award for reasonable upward adjustments of such compensation.
 
 
 119
 As to the other appeal and cross appeal issues, we affirm.
 
 
 120
 The parties shall bear their own costs on this appeal.
 
 
 121
 Affirmed in part; Reversed in part; and Remanded.
 
 
 
 *
 The Honorable Edward Dean Price, United States District Judge for the Eastern District of California, sitting by designation
 
 
 [1]
 California law governs this action, brought as a diversity case in the United States District Court for the Central District of California
 
 
 [2]
 Section 340.6, in relevant part, provides:
 An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first.
 
 
 [3]
 Summa incorrectly argues, in the alternative, that the district court should have applied section 338(4). That section sets a three-year statutory period for "[a]n action for relief on the ground of fraud or mistake" commencing upon "the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Cal.Code Civ.Proc. Sec. 338(4). Section 338(4) does not apply here because the gravamen of Summa's counterclaim is not fraud, but breach of fiduciary duty. Section 338(4) only applies to actions "based solely on fraud." See Robuck v. Dean Witter & Co., 649 F.2d 641, 644 (9th Cir.1980). Moreover, even if both sections 343 and 338(4) arguably apply to the counterclaim, section 343, with the longer statutory period, would take precedence. See Robuck, 649 F.2d at 645 n. 2 (citing San Filippo v. Griffiths, 51 Cal.App.3d 640, 645, 124 Cal.Rptr. 399, 402 (1975)); Kornbau v. Evans, 66 Cal.App.2d 677, 683-84, 152 P.2d 651, 655 (1944)
 
 
 [4]
 The Davis Parties argue that the district court properly exercised its inherent equitable powers to award interest at the prime rate. They contend that the court's denial of their motion for attorneys fees and costs in the face of "irrefutable evidence of Summa's bad faith" justifies the prime rate interest award. The district court's refusal to grant relief on one claim, however, cannot justify an excessive award on another. Moreover, the only case upon which the Davis Parties rely involves the court's equitable power to award attorneys fees, not interest. See Hall v. Cole, 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973)
 
 
 [5]
 Davis wrongly argues that its agreement with Summa was memorialized in writing and that, therefore, the district court should have applied section 337 of the California Code of Civil Procedure, the four-year statute of limitations for written contracts. The district court found that the compensation agreement was "not in writing, or memorialized in a writing signed by Summa." Davis points to no writings specifying the amount of Davis' compensation
 
 
 [6]
 Summa contends that the agreement for reasonable upward adjustments is unenforceable, relying on two distinguishable cases. In Grossman v. State Bar of California, 34 Cal.3d 73, 78, 192 Cal.Rptr. 397, 399, 664 P.2d 542, 544 (1983) (en banc), the court held that an attorney may not receive compensation greater than the amount specified under a fixed fee contract. This case, by contrast, does not involve a fixed fee contract, but a contract calling for a minimum payment of $120,000 plus reasonable upward adjustments. In Goldberg v. City of Santa Clara, 21 Cal.App.3d 857, 861, 98 Cal.Rptr. 862, 864 (1971), the court refused to grant "additional compensation" where "much more" than the amount to be paid was left uncertain. Here, the only term left open by the parties was the amount to be paid under the adjustment provision. Even the Goldberg court recognized that a court may enforce such a provision. Id
 
 
 [7]
 Howard M. Jaffe, Maxwell E. Cox and D. Martin Cook were all general partners of Davis & Cox responsible for Summa and Hughes matters. Jaffe was corporate secretary of Summa from December 1972 until August 1977
 
 
 [8]
 Cox, Jaffe and Cook argue that the district court should have given them leave to amend their complaint. The Davis Parties, however, could have moved for leave to amend their complaint, but inexplicably failed to do so
 
 
 [9]
 The Davis Parties filed a third-party complaint against FNB prior to the effective date of an amendment to the venue statute, section 94 of the National Banking Act. Former section 94, therefore, should govern this case. See In re Longhorn Securities Litigation, 573 F.Supp. 274, 276 n. 2 (W.D.Okla.1983) (former section 94 governed because case was filed prior to the effective date of the amendment). We should deny retroactive application of the amendment to prevent "manifest injustice." See Bradley v. School Board of Richmond, 416 U.S. 696, 716-17, 94 S.Ct. 2006, 2018-19, 40 L.Ed.2d 476 (1974). FNB would have asserted other grounds for dismissal had it been subject to amended section 94 at trial
 
 
 [10]
 The Davis Parties cite some authority that banks sued as third-party defendants or counterdefendants may be brought into court outside the district where the bank is established under an exception to former section 94. See Petrizzo v. United States, 492 F.Supp. 752, 755 (D.N.J.1980); Herndon v. Herndon, 491 F.Supp. 53, 55 (W.D.Tex.1980). The exception to section 94 permits defendants having no choice of forum to bring third-party banks into the action, and allows for the consolidation of related actions in one court. See Jones v. Kreminski, 404 F.Supp. 667, 668-69 (D.Conn.1975). FNB, however, persuasively argues that the exception should not apply to a case, such as this one, in which a plaintiff, rather than a defendant, brings the bank into the action. When it is the plaintiff who brings the third-party defendant into the action, the policy considerations do not compel application of the exception. The plaintiff, unlike the defendant, enjoys the privilege of choosing the forum in initiating the action
 
 
 [11]
 Before the California legislature included an express provision in section 317(a) of its corporate code for the recovery of "any expenses of establishing a right to indemnification," those expenses were not recoverable. See Heyler, Indemnification of Corporate Agents, 23 U.C.L.A.L.Rev. 1255, 1265 n. 68 (1976). Similarly, the absence of such a provision in the Delaware code suggests that Delaware law does not require corporations to reimburse those who incur expenses in establishing their right to indemnification