89 F.3d 844
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Mark A. ARRELLANO, Plaintiff-Appellant,
v.
THE CITY OF CULVER CITY, a Municipal corporation; Steve
Yoshida, individually and as a peace officer; Michael
Poulin, individually and as a peace officer; Chris
Gutierrez, individually and as a peace officer; Omar
Corrales, individually and as a peace officer; Elwin E.
(Ted) Cooke, individually and as Chief of Police; Sgt. D.
Irvin, individually and as a peace officer; Ofcr. Tankenson
individually and as a peace officer; Does 1-50, Defendants-Appellees.
 No. 94-55659.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 5, 1996.
Decided June 10, 1996.
 
 Before: SKOPIL, CANBY, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Mark Arrellano appeals the district court's judgment, in favor of the City of Culver City and City Police Department employees in Arrellano's action, pursuant to 42 U.S.C. §§ 1983 & 1985 and state tort law. Arrellano alleged that city employees covered up his negligent shooting and intentional beating by police officers after a vehicle pursuit. At the close of Arrellano's case, the district court granted most of the defendants' motion for a directed verdict and dismissed all causes of action against all officer defendants except the § 1983 claim for excessive force against three officer defendants. The jury returned a verdict in the officers' favor. The district court dismissed the remaining causes of action against the City of Culver City and Police Chief Cooke. Arrellano timely appealed, asserting judicial misconduct. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse and remand for trial before a different judge.
 
 FACTS[1] AND PRIOR PROCEEDINGS
 
 3
 On November 8, 1987, Arrellano was driving from Los Angeles to Long Beach and became lost. He found himself in Culver City around 4:00 a.m., where he was stopped by police. The police car was driven by Officer Poulin, who was being trained by Officer Yoshida. Poulin and Yoshida state that they stopped Arrellano because he made an illegal left-hand turn. Arrellano denies having committed any traffic violations.
 
 
 4
 Arrellano stopped his Mazda pickup in an alley when he was pulled over by Poulin and Yoshida. When Yoshida got out of the police car and approached the pickup, Arrellano sped away. The police gave chase, and ultimately cornered Arrellano in a cul-de-sac. Arrellano turned his truck around and faced the police car as both vehicles came to a stop. Arrellano's and the defendants' version of events diverge significantly at this point. According to the defendants, Yoshida again got out of the police car and approached Arrellano's truck, while ordering Arrellano to get out of his vehicle. Arrellano was not responsive, so Yoshida opened the passenger door and climbed into the cab of the truck with his gun drawn. Arrellano grabbed Yoshida and pulled on his right arm which was holding the gun. Yoshida pulled away and the gun accidentally discharged. Arrellano was shot in the left elbow.
 
 
 5
 Yoshida was not aware that Arrellano had been shot when his gun went off. Arrellano was holding onto the steering wheel with both hands and would not let go. Yoshida tried to get Arrellano's hands off the wheel, but couldn't so he punched Arrellano twice in the face. Officers Corrales and Gutierrez, who had been summoned to assist, arrived on the scene and approached Arrellano's vehicle. Yoshida saw Poulin, Corrales, and Gutierrez reach in through the window on the driver's side and grab Arrellano. Arrellano struck Corrales and Corrales hit him back twice. The officers got Arrellano out of the cab, wrestled him to the ground, and handcuffed him. During this time Arrellano was continuing to resist the officers' efforts to subdue him. Officer Tankenson arrived on the scene as Arrellano was handcuffed and took statements from the officers.
 
 
 6
 Arrellano's version of events is as follows: He had earlier been brutalized by police officers in other cities and was frightened when stopped for no apparent reason by Yoshida and Poulin. Therefore, he sped away from the stop. After he was stopped in the cul-de-sac, Poulin, not Yoshida, climbed into the cab of his pickup and told him to take his foot off the pedals. Arrellano took his foot off the clutch, the truck lurched forward, and Poulin's gun went off. Arrellano lost consciousness. His next memory is lying in a pool of blood on the driver's side of his truck. Arrellano did not recall being struck in the face while in the pickup. His memory is of an officer on his back as he was handcuffed and another officer punching him in the jaw.
 
 
 7
 Arrellano was taken to a hospital and treated for significant injuries to his elbow.
 
 
 8
 The police department's Special Investigations Team (SIT), headed by Officer Montanio, reviewed the Arrellano incident. The purpose of the SIT is to prepare for potential civil suits. Officer Irvin assisted in the review. Officer Corrales had prepared a standard police report on the incident. This report was changed by Montanio. Montanio testified in a deposition that Corrales' version stated that the gun went off as Yoshida was leaving the cab and that he had "corrected" it to state that the gun went off during the struggle between Arrellano and Yoshida.
 
 
 9
 Arrellano filed a claim for damages caused by the shooting with the City of Culver City in January 1988. In February 1988, Arrellano was arrested and charged with assault on a police officer and evading and resisting arrest. After a jury trial in 1990, Arrellano was convicted of evading arrest, a violation of California Vehicle Code 2800.1, but was acquitted of the assault and resisting arrest charges.
 
 
 10
 Arrellano brought this action against the City of Culver City, Chief Elwin E. Ted Cooke, Lt. John Montanio, Sgt. Dan Irvin, and Officers Corrales, Gutierrez, Poulin, Tankenson, and Yoshida. He alleged that the defendants were responsible for damages caused him by their efforts to cover up Poulin's negligent shooting of him and damages caused by the beating he received on November 8, 1987. Arrellano's complaint alleged causes of action for 42 U.S.C. § 1983 civil rights violations (false arrest, excessive force, conspiracy, malicious prosecution[2]); 42 U.S.C. § 1985 conspiracy; and state law claims for negligence, intentional infliction of emotional distress, civil conspiracy, torts in essence, and violation of civil rights. The defendants moved for partial summary judgment against the § 1983 claims for excessive force and false arrest; the § 1985 claims for conspiracy, the claims for negligence, and the state law conspiracy claim. The district court granted summary judgment against the § 1985 conspiracy claim and the claim for negligence with respect to all defendants except Yoshida, Poulin, and the City of Culver City. The trial was bifurcated with Monell[3] liability against the City and Chief of Police to be tried after the liability and damage phase against the individual officers. At the conclusion of Arrellano's case, the district court granted most of the defendants' motion for a directed verdict and dismissed all causes of action against all officer defendants except the § 1983 claim for excessive force against Poulin, Gutierrez, and Corrales. The jury returned a verdict in the officers' favor. The district court dismissed the remaining causes of action against the City of Culver City and Police Chief Cooke. Arrellano timely appealed, asserting that the conduct of the trial judge deprived him of a fair trial.
 
 ANALYSIS
 
 11
 Allegations of judicial misconduct are reviewed under the abuse of discretion standard. United States v. Laurins, 857 F.2d 529, 537 (9th Cir.1988), cert. denied, 492 U.S. 906 (1989). "A trial judge is more than an umpire, and may participate in the examination of witnesses to clarify evidence, confine counsel to evidentiary rulings, ensure the orderly presentation of evidence, and prevent undue repetition." Id. The standard for reversal is whether the "trial was unfair" or the party "was deprived of a fair opportunity to prove [his or her] case." Penk v. Oregon State Bd. of Higher Educ., 816 F.2d 458, 466-67 (9th Cir.), cert. denied, 484 U.S. 853 (1987). "A trial judge's participation may ... overstep the bounds of propriety and deprive the parties of a fair trial." United States v. Mostella, 802 F.2d 358, 361 (9th Cir.1986). A new trial should be granted "if the record discloses actual bias on the part of the trial judge or leaves the reviewing court with an abiding impression that the judge's remarks and questioning of witnesses projected to the jury an appearance of advocacy or partiality." Shad v. Dean Witter Reynolds, Inc., 799 F.2d 525, 531 (9th Cir.1986) (quoting Warner v. Transamerica Ins. Co., 739 F.2d 1347, 1351 (8th Cir.1984)).
 
 
 12
 Our review of the record leaves us with "an abiding impression" that the cumulative effect of the trial judge's conduct and remarks rendered the trial unfair.[4] Because this was a case involving Arrellano's word versus that of the police officers, comments of the judge indicating that the police's version was more believable deprived Arrellano of a fair opportunity to prove his case. When Arrellano's counsel was cross-examining a police officer concerning the relative risk of the traffic stop, the judge stated: "Every time a policeman walks up beside a car, he is taking a chance and he's got his life in his hands." The judge then abruptly terminated cross-examination of this officer. Several other times, when Arrellano's counsel was attempting to impeach police officer testimony, the judge commented that the evidence was not impeaching or told the jury, "you can have different memories at different times." When Arrellano's counsel posed a hypothetical based on Arrellano's version of events, the judge asked counsel the basis for the facts in the hypothetical, counsel replied that Arrellano had testified to that effect, and the judge remarked "so what?"
 
 
 13
 In addition, the trial judge threatened to jail Arrellano's counsel at least nine times during the course of the trial and ultimately called for the federal marshals to take counsel to jail in front of the jury. Arrellano's counsel was taken to jail after the jury was excused, but the judge's treatment of counsel must have left the jury with the impression that counsel lacked integrity or had otherwise acted reprehensibly. The jailing of Arrellano's counsel, together with the trial judge's remarks, overstepped the bounds of judicial propriety and deprived Arrellano of a fair trial. Therefore, we must reverse and remand for a new trial. We reverse the district court's directed verdict in favor of the officer defendants, the jury's verdict in favor of Officers Poulin, Gutierrez, and Corrales on Arrellano's § 1983 claim for excessive force, and the district court's dismissal of the claims against the City of Culver City and Police Chief Cooke.
 
 
 14
 Arrellano asks that the case be remanded to a different judge. Remand to a different judge is granted only in "unusual circumstances." Davis & Cox v. Summa Corp., 751 F.2d 1507, 1523 (9th Cir.1985). In making this determination, we may consider (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. Id. Under the circumstances of this case, we believe that the interests of justice will be furthered by the assignment of the case to another judge to try the case on remand.
 
 
 15
 REVERSED AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The underlying facts are in dispute. When the accounts of Arrellano and the defendants differ, two versions of the events will be presented
 
 
 [2]
 We note that "[t]he constitutional foundation for a claim of malicious prosecution under § 1983 is a matter of dispute." Haupt v. Dillard, 17 F.3d 285, 290 n. 4 (9th Cir.1994) (citing Albright v. Oliver, 114 S.Ct. 807 (1994))
 
 
 [3]
 See Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978)
 
 
 [4]
 We note that there is no issue of actual bias on the part of the trial judge